## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| MARSHALL GOLDMAN, individually and on behalf of all others similarly situated,<br><br>     *Plaintiff,*<br><br>*v.*<br><br>HSI FINANCIAL SERVICES, LLC, a Georgia limited liability company, PHOENIX HEALTH CARE MANAGEMENT SERVICES, INC., a Georgia corporation, VHA Georgia, a Georgia corporation, and VHA INC., a Delaware corporation,<br><br>     *Defendants*. | CASE NO. 1:14-CV-00307-AT |

## PLAINTIFF MARSHALL GOLDMAN'S COMBINED RESPONSE IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

## <u>TABLE OF CONTENTS</u>

<u>INTRODUCTION</u> ............................................................ 1

<u>FACTUAL AND PROCEDURAL BACKGROUND</u> ........................................ 4

<u>THE TCPA</u> ............................................................ 6

<u>LEGAL STANDARDS</u> ............................................................ 7

<u>ARGUMENT</u> ............................................................ 9

I.    Defendants' Motions to Dismiss Under Rule 12(b)(6) Should
      be Denied. ............................................................ 9

      A.    Goldman adequately pleads claims against Defendants
            under 47 U.S.C. § 227(b)(1)(A)(iii) on behalf of the
            putative class. ............................................................ 9

      B.    The FAC expressly delineates each Defendant's role in
            effectuating the robo-calls and provides them with sufficient
            notice of the claims they are called upon to meet. ........................ 12

      C.    Plaintiff sufficiently alleges facts demonstrating that Defendant
            VHA may be held vicariously liable for Defendants' calls. .......... 16

      D.    The TCPA prohibits robo-calls to residential landlines, including
            debt collection calls like those at issue in this case. ...................... 19

            1.    *The FCC has not—and could not—exempt erroneous
                  debt collection calls to non-debtors from Section
                  227(b)(1)(B)'s prohibition against robo-calls to
                  residential landlines.* ................................................. 20

                  i.    <u>No FCC rule or order expressly exempts erroneous debt
                        collection robo-calls to non-debtors.</u> ............................. 21

ii.   No FCC rule or order can be read as implicitly exempting erroneous debt collection robo-calls to non-debtors, because the TCPA narrowly limits the FCC's authority to create such exemptions. .................................................... 23

2.   *The cases Defendants rely upon are inapposite and distinguishable in any event.* .................................................. 28

II.   **Defendants' 12(b)(1) Standing Arguments Likewise Fail—Goldman Sufficiently Alleges that VHA Inc. and VHA Georgia Caused Him an Injury that is Fairly Traceable to Their Actions.** ..................... 30

**CONCLUSION** ................................................................................ 33

# TABLE OF AUTHORITIES

## Cases

*Agne v. Papa John's Intern., Inc.*, 286 F.R.D. 559 (W.D. Wash. 2012) .......... 32, 33

*Allen v. Wright*, 468 U.S. 737 (1984) .................................................. 31

*American United Life Ins. Co. v. Martinez*, 480 F.3d 1043 (11th Cir. 2007)........... 8

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................ 8

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)................................... 8,9

*Bentley v. Bank of Am., N.A.*, 773 F. Supp. 2d 1367 (S.D. Fla. 2011) ................. 14

*Corson v. Accounts Receivable Management, Inc.*,
2013 WL 4047577 (D. N.J. Aug. 9, 2013) ........................................ 29, 30

*Dekalb Cnty. v. HSBC N. Am. Holdings, Inc.*, No. 1:12-CV-03640-SCJ,
2013 WL 7874104 (N.D. Ga. Sept. 25, 2013)............................................. 31

*Erickson v. Pardus*, 551 U.S. 89 (2007) ................................................ 8

*F.D.I.C. v. Briscoe*, No. 1:11-CV-02303-SCJ, 2012 WL 8302215
(N.D. Ga. Aug. 14, 2012) ..................................................... 15-16

*Franasiak v. Palisades Collection LLC*, 822 F. Supp.2d 320
(W.D. N.Y. 2011) ........................................................... 22

*Hamlett v. Santander Consumer USA Inc.,* 931 F. Supp. 2d 451
(E.D.N.Y. 2013) ............................................................. 27

*Hinman v. M & M Rental Ctr., Inc.*, 545 F. Supp. 2d 802 (N.D. Ill. 2008)........... 11

*Hoover v. Monarch Recovery Mgmt., Inc.*, 888 F. Supp. 2d 589
(E.D. Pa. 2012) ............................................................. 29

*Jackson v. BellSouth Telecommuns.*, 372 F.3d 1250 (11th Cir. 2004) .................. 15

*Jackson v. BellSouth Telecommuns., Inc.*, 181 F. Supp. 2d 1345
    (S.D. Fla. 2001) ........................................... 15

*Kramer v. Autobytel, Inc.*, 759 F. Supp. 2d 1165 (N.D. Cal. 2010) ...................... 15

*Legg v. Voice Media Grp., Inc.*, No. 13-62044-CIV, 2014 WL 2004383
    (S.D. Fla. May 16, 2014) .............................................. 18

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) .............................. 8

*Magluta v. Samples*, 256 F.3d 1282 (11th Cir. 2001) ............................. 16

*Manno v. Healthcare Revenue Recovery Grp., LLC*, 289 F.R.D. 674
    (S.D. Fla. 2013) ....................................................... 10,33

*Meadows v. Franklin Collection Service, Inc.*, 414 Fed. Appx. 230
    (11th Cir. 2011) ....................................................... 28-30

*Mims v. Arrow Fin. Svcs's, LLC*, 132 S. Ct. 740 (2012) ................................. 6, 24

*Moore v. Fidelity Fin. Serv., Inc.*, No. 94-cv-2558, 1998 WL 210941
    (N.D. Ill. Mar. 16, 1998) ............................................ 11

*Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242 (11th Cir. 2014) .................... 30

*Palm Beach Golf Center-Boca, Inc. v. Sarris*, No. 12-cv-80178,
    2013 WL 5972173 (S.D. Fla. Oct. 22, 2013) ......................................... 16,17

*Peter Strojnik, P.C. v. Singalife, Inc.*, No. CV-08-1116,
    2009 WL 605411 (D. Ariz. Mar. 9, 2009).................................... 15

*Pittsburg & Midway Coal Mining Co. v. Dir., Office of Workers' Comp.
Programs, U.S. Dep't of Labor,* 508 F.3d 975 (11th Cir. 2007) ................. 26

*Platypus Wear, Inc. v. Clarke Modet & Co., S.L.*, 06-20976-CIV,
    2008 WL 2557503 (S.D. Fla. June 23, 2008)......................................... 17-19

*Platypus Wear, Inc. v. Clarke Modet & Co., S.L.*, 06-20976-CIV,
  2008 WL 2761300, (S.D. Fla. July 15, 2008) ............................................. 17

*Rantz-Kennedy v. Discover Financial Services*, 2013 WL 3167912
  (D. Md. June 20, 2013) ................................................................................. 29

*Santino v. NCO Fin. Sys., Inc.*, No. 09-CV-982-JTC, 2011 WL 754874
  (W.D.N.Y. Feb. 24, 2011) ............................................................................ 30

*Spillman v. Dominos Pizza, LLC*, No. 10-cv-349, 2011 WL 721498
  (M.D. La. Feb. 22, 2011) ......................................................................... 10-12

*Steele v. Nat'l Firearms Act Branch*, 755 F.2d 1410 (11th Cir. 1985) ..................... 8

*Smith v. State Farm Mut. Auto. Ins. Co.*, No. 13 C 2018, 2013 WL 5346430
  (N.D. Ill. Sept. 23, 2013) .............................................................................. 18

*Visser v. Caribbean Cruise Lines, Inc., et al.*, No. 13-cv-1029,
  Dkt. 21 at 33 (W.D. Mich. Apr. 4, 2014) ............................................... 11, 12

*Watson v. NCO Group Inc.*, 462 F. Supp. 2d 641 (E.D. Pa. 2006) .................. 23, 25

*Williams v. Scott*, No. 1:13-CV-3567-TWT, 2014 WL 916556
  (N.D. Ga. Mar. 7, 2014) ................................................................................ 31

## Rules & Statutes

47 U.S.C. 227, *et seq.* ........................................................................... *passim*

Fed. R. Civ. P. 8 ..................................................................................... *passim*

Fed. R. Civ. P. 12 ................................................................................... *passim*

U.S. CONST. art. III, § 2 ....................................................................... *passim*

## Other

137 Cong. Rec. H11307 (Daily Ed. Nov. 26, 1991) ............................................. 24

47 C.F.R. § 64.1200 ................................................................................. *passim*

*In the Matter of the Joint Petition Filed by Dish Network, LLC et al.*
   *for Declaratory Ruling Concerning the Tel. Consumer Prot.*
   *Act (TCPA) Rules*, 28 F.C.C. Rcd. 6574 (2013) ............................... 16-17, 31

*In the Matter of the Tel. Consumer Prot. Act of 1991*,
   7 F.C.C. Rcd. 2736 (1992) ........................................................ 21-22, 24, 26

*In the Matter of Rules & Regulations Implementing the Tel. Consumer*
   *Prot. Act of 1991,* 7 F.C.C. Rcd. 8752 (1992) ................................................ 21

*In the Matter of Rules & Regulations Implementing the Tel. Consumer*
   *Prot. Act of 1991*, 10 F.C.C. Rcd. 12,391 (1995) ......................................... 22

*In the Matter of Rules & Regulations Implementing the Tel. Consumer*
   *Prot. Act of 1991*, 27 F.C.C. Rcd. 1830 (2012) ............................... 21, 23, 27

*In the Matter of Rules & Regulations Implementing the Tel. Consumer*
   *Prot. Act of 1991,* 23 F.C.C.R. 559 (2008) ................................................... 22

S. REP. 102-178, 1, 1991 U.S.C.C.A.N. 1968 ...................................................... 24

## INTRODUCTION

This case challenges Defendant HSI Financial Services, LLC's practice of placing unauthorized debt collection calls to the landline and cellular telephones of thousands of individuals nationwide on behalf of its co-Defendants VHA Inc., VHA Georgia, and Phoenix Services Inc., all in violation of the Telephone Consumer Protection Act, 47 U.S.C. 227, *et seq.* (the "TCPA"). The calls at issue in this case are particularly egregious because—aside from the fact that Defendants never obtained consent to make them—in many instances (as with Plaintiff Marshall Goldman), the call recipients do not actually owe any debt. Now, Defendants each seek dismissal of Goldman's claims in their entirety pursuant to Federal Rules 12(b)(6) and 12(b)(1).[1]

First, Defendants each argue that Goldman fails to allege facts sufficient to state a cause of action for their violation of the TCPA's cell phone provision—47 U.S.C. § 227(b)(1)(A)(iii)—because he alleges only that he received calls on his residential landline. This argument—which, at its core, challenges Goldman's standing—entirely misunderstands the claims alleged. As the parties (through counsel) have discussed repeatedly, Goldman has not asserted a separate cause of

---

[1]     To avoid confusion, Goldman cites Defendant VHA Inc.'s and VHA Georgia's Motions to Dismiss as "VHA Inc. MTD" and "VHA Georgia MTD," respectively. Defendants HSI and Phoenix jointly filed their Motion to Dismiss, which is referred to herein as "HSI MTD."

action on his own behalf under the cell phone provision of the TCPA, but rather, seeks to represent the members of the putative class that received the same calls he got on his landline, but on their cellular phones. Courts across the country have consistently held that putative class representatives, like Goldman, who have standing to bring claims under one provision of the TCPA, may represent individuals who received the same unlawful calls. The result should be no different here.

Next, Defendants argue that Goldman's allegations fail to meet Rule 8's liberal notice pleading standard. First, they contend that Goldman has improperly "lumped" Defendants' alleged conduct together, making it impossible for them to determine which allegations are being asserted against which Defendant. VHA Inc. additionally argues that Goldman has not pled facts sufficient to demonstrate that it can be held vicariously liable for calls made by HSI. Both of these arguments fail. Going well beyond the "short and plain statement" required under Rule 8(a)(2), Goldman specifically delineates each Defendant's role in effectuating, directing, and/or benefitting from the unauthorized "debt" collection calls at issue, and why as a result, VHA may be held vicariously liable for the calls. Thus, these arguments do not require dismissal either.

Defendants also argue that Goldman cannot state a TCPA claim for

Defendants calls to residential landlines because the Federal Communications Commission (the "FCC" or the "Commission") has specifically exempted those sorts of calls from the TCPA's purview. Defendants are wrong. The FCC has not once addressed the type of erroneous debt collection calls received by Goldman on his landline, and given the express language of the TCPA, has no authority to make such an exemption. None of the cases cited by Defendants require a different result and therefore, their motions should be denied in this regard.

Finally, Defendant VHA Inc. (and in a three-line footnote) VHA Georgia, lodge a 12(b)(1) attack, arguing that Goldman fails to allege facts demonstrating that his injury is "fairly traceable" to their conduct, as required for Article III standing. Like their other challenges, Defendants' arguments here are not compelling. As both the FCC and courts around the country have made clear, the TCPA permits Goldman to recover under theories of both direct and vicarious liability. As such, in order to satisfy Article III's "fairly traceable" requirement, Goldman need only allege facts sufficient to support a finding that Defendants can be held vicariously liable for the conduct at issue. As noted above (and as discussed in more detail below), Goldman easily satisfies this requirement as well.

For all of these reasons and as explained further below, Defendants' Motions should be denied in their entirety.

## FACTUAL AND PROCEDURAL BACKGROUND

### *The Relationship Between Defendants and the Services They Offer*

Defendants are in the business of providing various insurance and human resource services to hospitals, and in particular, specialize in health-care related debt collection services throughout the state of Georgia. (*See* Plaintiff's First Amended Class Action Complaint, hereinafter referred to as the "FAC" ¶¶ 1, 2.) Defendants are all closely related and work directly and/or for the benefit of one another. (FAC ¶¶ 1, 7-10.)

Specifically, Defendant VHA Inc. operates a nationwide network of community-owned health care organizations and physicians made up of "12 regional offices" which it refers to as its "family of companies." (*Id.* ¶¶ 10, 13, Fig. 1, 2.) Defendant VHA Georgia, one of these regional offices, works directly for, and under VHA Inc.'s control. (*Id.* ¶¶ 14-15, Fig. 2.) For its part, VHA Georgia created Defendant Phoenix, who in turn created HSI—a debt collection company—to provide "revenue management support" and "improve [the] collection process" for the companies in the VHA family. (*Id.* ¶¶ 15-19, Fig. 4-8, 10.) VHA Inc. controls each of the Defendant entities, and through HSI's debt collection services, Defendants jointly service and increase revenue for VHA's clients. (*Id.* ¶¶ 2, 15, 19, 21 Fig. 7 & 8.)

4

***Defendants' Debt Collection Efforts Include Robo-Calls to Non-Debtors***

In order to improve their "revenue management services"—and thus increase Defendants' profits—Defendant HSI began making repeated and harassing robo-calls to consumers, despite the fact that those individuals never provided their telephone numbers to Defendants or gave consent to be called. (*Id.* ¶ 25.) Instead, Defendants used methods such as "skip tracing" and "number trapping" to determine how to reach the supposed debtors and as a result, HSI repeatedly made calls to individuals who had no previous relationship with Defendants and who owed no debt whatsoever. (*Id.* ¶¶ 25-30.) Each Defendant was aware that HSI made these calls on their behalf, but nevertheless knowingly continued to benefit from them. (*Id.* at ¶¶ 2, 23, 26; *see also* Fig. 9; Fig. 10.)

Plaintiff Marshall Goldman is one of the many individuals who fell victim to Defendants' debt collection tactics. (*Id.* ¶¶ 26-33.) Specifically, starting in October 2013, Goldman received numerous debt collection robo-calls from HSI on his residential landline, even though he did not owe a debt to Defendants, did not have any previous relationship with them, and never consented to receive their calls. (*Id.* ¶¶ 31-33, 36.)[2] Though he desired to stop these harassing calls—each of which

---

[2]     Defendant VHA Inc. claims that "Plaintiff does not allege what year he received the 'robo-calls' from HSI" (VHA Inc. MTD at 4), but as the FAC demonstrates, that is not an accurate statement. (FAC ¶ 32.)

requested to speak with someone other than him—the calls provided absolutely no means for Goldman to opt-out and did not provide him a way to speak with a live person, so that he could request they be stopped. (*Id.* ¶¶ 32, 34.) As a result, Goldman, like the rest of the individuals who received Defendants' automated calls, suffered a significant invasion of privacy, and in some instances, actual damages to the extent they were charged for receiving the calls. (*Id.* ¶¶ 35, 47.)[3]

Fed up and with no other options, on February 3, 2014, Goldman filed his original class action complaint in this Court, alleging TCPA claims against Defendants HSI, Phoenix, and VHA Inc., on behalf of all individuals who received—but never consented to—Defendants' calls. (Dkt. 1.) On April 7, 2014, Goldman amended his complaint to name VHA Georgia as a party-defendant and made several additional allegations. (Dkt. 26.) Defendants now each seek dismissal of Goldman's claims. (Dkts. 29, 30, 39.)

## THE TCPA

Congress enacted the TCPA in 1991 in response to "[v]oluminous consumer complaints about abuses of telephone technology . . ." *Mims v. Arrow Fin. Svcs's, LLC*, 132 S. Ct. 740, 744 (2012). The TCPA prohibits "certain practices invasive

---

[3]     As noted in Defendants' Motions, Goldman does not contend that he received calls on his cell phone or that he was charged for the calls received on his landline.

of privacy and directs the [FCC] to prescribe implementing regulations." *Id.* To

combat the growing threat to privacy, Section 227(b)(1) of the TCPA makes it

unlawful for any person within the United States…

> (A) (iii) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call; [and]
>
> (B)     to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes or is exempted by rule or order by the Commission under paragraph (2)(B)…

47 U.S.C. § 227(b)(1)(A)(iii); 47 U.S.C. § 227(b)(1)(B).

The TCPA sets statutory damages in the amount of $500 per violation of

either provision and provides for injunctive relief prohibiting the further making or

transmission of such calls and messages. *See* 47 U.S.C. § 227(b)(3)(A-B).

## LEGAL STANDARDS

Defendants' Motions are governed by Federal Rules of Civil Procedure 8,

12(b)(1) and 12(b)(6). Rule 8(a)(2) requires only that the FAC contain a "short and

plain statement of the claim" showing that Goldman is entitled to relief. Fed. R.

Civ. P. 8(a)(2). Thus, to survive a motion to dismiss under Rule 12(b)(6), Goldman need only clear two minimum hurdles: (i) the complaint must describe the claim in sufficient detail to give Defendants "fair notice" of what his claims are and the grounds upon which they rest; and (ii) the complaint's allegations must plausibly suggest that Goldman has a right to relief, raising that possibility above a speculative level. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). Finally, to survive a 12(b)(1) standing attack, Goldman must have alleged facts sufficient to demonstrate that (i) he suffered an injury in fact, (ii) that is fairly traceable to the Defendants' challenged conduct, and (iii) that is likely to be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992).

In evaluating motions to dismiss under either Rule 12(b)(6) or 12(b)(1), Goldman's allegations should be presumed true, and all reasonable inferences drawn in his favor. *Steele v. Nat'l Firearms Act Branch*, 755 F.2d 1410, 1414 (11th Cir. 1985); *American United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1066 (11th Cir. 2007). Moreover, "specific facts are not necessary; the statement need only give the defendant fair notice of what…the claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quotations omitted).

## **ARGUMENT**

## **I.     Defendants' Motions to Dismiss Under Rule 12(b)(6) Should be Denied.**

Defendants collectively assert four bases for dismissal of Goldman's claims

under Rule 12(b)(6): (i) that Goldman has not adequately stated a claim under 47

U.S.C. § 227(b)(1)(A)(iii), and thus that he does not have standing to represent

individuals who received calls on their cell phones; (ii) that the FAC is a "shot

gun" pleading that improperly lumps Defendants together; (iii) that Goldman has

failed to adequately plead a theory of vicarious liability against VHA Inc.; and (iv)

that their debt collections calls are exempt from TCPA liability. As discussed

below, none of these arguments should stand as a basis for dismissal.

### **A.     Goldman adequately pleads claims against Defendants under 47 U.S.C. § 227(b)(1)(A)(iii) on behalf of the putative class.**

Defendants each argue that Goldman fails to allege facts sufficient to state a

cause of action for their violations of 47 U.S.C. § 227(b)(1)(A)(iii), because the

FAC states that Goldman received Defendants' calls on his residential landline, not

a cell phone. (VHA MTD at 15-16; HSI MTD at 9-16; VHA Georgia MTD at 13-

14.)[4] This argument essentially asserts that Goldman lacks standing to bring a

---

[4]     Defendant HSI devotes a significant portion of its brief to arguing that
Goldman's allegations are insufficient to state a claim under Section
227(b)(1)(A)(iii)'s—the TCPA's cell phone provision—because he fails to allege
that he received a telephone call to "any [telephone] service for which he was

claim under 47 U.S.C. § 227(b)(1)(A)(iii)—the cell phone provision of the TCPA—because he received Defendants' calls on his landline. This argument is misplaced.

Goldman pleads claims under Section 227(b)(1)(A)(iii) to protect the interests of putative class members who received on their cellular telephones the very same calls he received on his landline, not to obtain individual relief for himself under that provision. Courts across the country have consistently held that where, as here, a putative class representative has standing to assert claims under one provision of the TCPA on his own behalf (here, the landline provision),[5] he/she may also represent individuals who have claims under other provisions of the TCPA so long as they are based upon the same offending calls and conduct. *See, e.g.*, *Spillman v. Dominos Pizza, LLC*, No. 10-cv-349, 2011 WL 721498, at *3

charged." (HSI MTD. at 9-16.) Defendant VHA Georgia makes a similar argument. (*See* VHA Georgia MTD at 4, 13-14.) Defendants' arguments here entirely miss the mark. As discussed above, Goldman did not intend to state an *individual* claim under the cell phone provision of the TCPA, and as such, need not assert that he was charged for the calls. As such, Defendants' lengthy arguments in support of their positions are superfluous and can be ignored.

[5] Of course, Goldman has Article III standing to bring a claim under Section 227(b) because his rights under the TCPA were violated (the injury) when Defendants made multiple prerecorded calls to his telephone in violation of the TCPA—an injury that can be redressed by a favorable ruling on the merits and an award of statutory damages. *See Manno v. Healthcare Revenue Recovery Grp., LLC*, 289 F.R.D. 674, 681-82 (S.D. Fla. 2013) (holding that a plaintiff "need not be charged for the call" in order to have standing to complain") (citations omitted).

(M.D. La. Feb. 22, 2011); *Visser v. Caribbean Cruise Lines, Inc., et al.*, No. 13-cv-1029, Dkt. 21 at 33 (W.D. Mich. Apr. 4, 2014);[6] *Hinman v. M & M Rental Ctr., Inc.*, 545 F. Supp. 2d 802, 805 (N.D. Ill. 2008) (quoting *Moore v. Fidelity Fin. Serv., Inc.*, No. 94-cv-2558, 1998 WL 210941, at *3 (N.D. Ill. Mar. 16, 1998)).

The holding in *Spillman* is particularly instructive on this point. In *Spillman*, the plaintiff alleged that she received the defendant's prerecorded calls on her cellular phone in violation of Section 227(b), but sought to represent a class of individuals who received the same calls on *both* their cell phones and/or residential landlines. 2011 WL 721498, at *3. Arguing that the plaintiff lacked standing to pursue any landline claims because she admittedly received calls on her cell phone only, defendant sought dismissal of her landline claims. *Id.* The court rejected the defendant's standing argument, holding that the plaintiff could bring claims on behalf of both cell phone and landline users because the "[t]he theory of liability" under the cell phone and landline provisions of the TCPA, and the calls and conduct in question, were "virtually the same." *Id.*; *see also Visser*, Dkt. 21 at 32-33 (rejecting standing argument and denying motion to dismiss where the plaintiff received calls only on his landline but brought claims on behalf of cell phone users as well).

---

[6]     A copy of the *Visser* Opinion is attached hereto as Exhibit 1.

As in *Visser* and *Spillman*, the calls Goldman received on his landline were materially identical to those received by other class members on their cell phones. *See Spillman*, 2011 WL 721498 at *3; *Visser*, Dkt. 21 at 32-33. Specifically, the FAC demonstrates that (i) the content of the calls—debt collection calls seeking to collect an alleged debt owed to Defendants, (ii) the type of calls—unauthorized calls that featured an artificial or pre-recorded voice, and (iii) the manner in which Defendants effectuated the calls—by the acquisition of class members' numbers through "skip tracing" and "number trapping," are all common. (FAC ¶¶ 2, 4, 24, 25, 30, 40.) Moreover, Goldman alleges that each call was made by HSI on behalf and/or for the benefit of the other Defendants. (*Id.* ¶¶ 2, 21, 23, 32.) Thus, because just like in *Spillman*, the difference between receiving Defendants' calls on a landline or cell phone is "insufficient" to distinguish the claims and "[t]he theory of liability is virtually the same," Goldman has standing to represent individuals who received calls on *either* their landline or cell phone. *Id.* at 3.

As such, Defendants' Motions to Dismiss should be denied in this respect.

**B.   The FAC expressly delineates each Defendant's role in effectuating the robo-calls and provides them with sufficient notice of the claims they are called upon to meet.**

Defendant HSI next claims that Goldman "failed to provide Defendants with notice of the violations claimed against [it]" because he improperly "lumped" its

actions with those of the other Defendants. (HSI Inc. MTD at 16-17.) Mimicking this assertion, VHA Georgia contends that the FAC is a "shotgun" pleading comprised of conclusory allegations that fail to make *any* distinction among Defendants' misconduct. (VHA Georgia MTD at 6-8.) These arguments do not withstand scrutiny either.

Contrary to Defendants' assertions, the FAC carefully details each Defendant's business relationship with the others and explains the benefits they each received from—and thus their liability for—HSI's calls. Specifically, Goldman alleges that Defendant VHA Inc. describes itself as "a nationwide network of leading community-owned health care organizations and physicians" who, as a corporate formality, has an office in the State of Georgia—*i.e.* Defendant VHA Georgia—that is "nothing more than a regional office that works directly for and through" as well as "under the control of VHA Inc." (FAC ¶¶ 14-15; *see also* Fig. 1-2.) Additionally, Goldman alleges that VHA Georgia "has broken down its services into several companies"—including Defendants Phoenix and HSI—for the sole purpose of "providing servicing to VHA's member [clients]." (*Id.* ¶¶ 17, 21; *see also* Fig. 5-6.) Goldman then specifically alleges that HSI serves as the "debt collector for the VHA family of companies" by making robo-calls from which VHA Inc. and their hospitals "knowingly and collectively benefit." (*Id.* ¶¶ 2, 21,

13

19, 23; *see also* Fig. 7 & 8.)

The FAC also includes numerous allegations demonstrating that Defendants are, in reality, merely alter egos of each other and that each benefit from HSI's unlawful calling activities. (*See id.* ¶ 22 (alleging that "VHA Inc., through its local office VHA Georgia, plays a direct role in managing and directing HSI's business" and further citing to a 2010 article from VHA Georgia's website confirming the same); *id.* ¶ 18 (alleging that "VHA Inc. shares employees with Phoenix [] and VHA Georgia…who in turn share employees and executive officers with HSI"); *id.* ¶ 20 (alleging that HSI's purported services "directly mimic[] the services VHA Inc. purports to offer its customers").) Thus, the FAC makes clear that HSI effectuated the robo-calls, and that it did so under the control and for the benefit of Phoenix, VHA Georgia, and VHA Inc.[7]

Finally and contrary to HSI's assertions, dismissal is not appropriate merely because some of Goldman's allegations state that "Defendants" are collectively responsible for the unlawful calls. (HSI MTD at 17.) To be sure, courts routinely

---

[7]    HSI relies on *Bentley v. Bank of Am., N.A.*, 773 F. Supp. 2d 1367 (S.D. Fla. 2011) for the proposition that the FAC fails to notify it of the allegations asserted against it, but that case is inapposite. In *Bentley*, the court found that the complaint failed to "identify which defendant made each call." *Id.* at 1374. In this case, however, Goldman repeatedly alleges that HSI is the "debt collector for the VHA family of companies," that "HSI [is responsible for] plac[ing] debt collection calls…from which Defendants…benefit," and that the unlawful debt collection calls are made "through [] HSI" for all Defendants' benefit. (FAC ¶¶ 2, 21, 23.)

allow for some degree of combined pleading where defendants have acted in concert, so long as each defendant's respective role is particularly defined. *See Jackson v. BellSouth Telecommuns., Inc.*, 181 F. Supp. 2d 1345, 1362 (S.D. Fla. 2001) (holding that because "specific allegations...clarif[ied]...who made the statements to the plaintiffs," supposedly lumped allegations "were not fatal to the overall claim.") *aff'd sub nom. Jackson v. BellSouth Telecommuns.*, 372 F.3d 1250 (11th Cir. 2004); *see also Peter Strojnik, P.C. v. Singalife, Inc.*, No. CV-08-1116, 2009 WL 605411, at *4 (D. Ariz. Mar. 9, 2009) (finding use of the term "Defendants" sufficient under Rule 8(a)(2) "because it puts all [d]efendants on notice that each defendant is being sued for violating the TCPA."); *Kramer v. Autobytel, Inc.*, 759 F. Supp. 2d 1165, 1171 (N.D. Cal. 2010) (upholding TCPA complaint with nearly identical allegations against multiple defendants where allegations did not distinguish roles). Thus, Goldman's allegations that "Defendants" are responsible for the unauthorized calls are appropriate in light of the other detailed allegations in the FAC, and Defendants' "lumping" argument must be rejected.[8]

---

[8]    VHA Georgia also contends that courts in this Circuit hold "dismissal with prejudice [to be] the better course" with respect to shotgun pleadings. (VHA Georgia MTD at 6-7.) Just the opposite is true. *See, e.g., F.D.I.C. v. Briscoe*, No. 1:11-CV-02303-SCJ, 2012 WL 8302215, at *8 (N.D. Ga. Aug. 14, 2012) (finding that the "Court's independent research further shows that when faced with []

### C.   Plaintiff sufficiently alleges facts demonstrating that Defendant VHA may be held vicariously liable for Defendants' calls.

Defendant VHA Inc. also insists that Goldman fails to plead facts sufficient to demonstrate that it can be held vicariously liable for the calls. (VHA MTD at 16-18.) Specifically, it argues that while the FAC alleges "HSI made the calls on behalf of dozens of [VHA's] hospitals," it does not allege that these calls were made by or on behalf of VHA Inc. (*Id.* at 16-17.) This argument fails too.

As VHA openly acknowledges, a party can be held both directly and vicariously liable for violations of the TCPA. (VHA Inc. MTD at 16); *see Palm Beach Golf Center-Boca, Inc. v. Sarris*, --- F. Supp. 2d ----, No. 12-cv-80178, 2013 WL 5972173, at *6 (S.D. Fla. Oct. 22, 2013) ("The FCC views agency broadly; a seller may be liable for third-party acts under the principles of formal agency, apparent authority, and ratification.") (citing *In the Matter of the Joint Petition Filed by Dish Network, LLC et al. for Declaratory Ruling Concerning the Tel. Consumer Prot. Act (TCPA) Rules*, 28 F.C.C. Rcd. 6574, 6584 (2013)). However,

---

arguments (regarding group or 'lump' pleading), other courts have dismissed…without prejudice and/or ordered repleading"). Thus, not surprisingly, the cases cited by VHA Georgia in support of its argument that the FAC is a "shotgun" pleading that warrants dismissal with prejudice are each distinguishable, and should not be relied on here. *See, e.g., Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001) (addressing the plaintiff's *Bivens* claims—which itself has a heightened pleading standard—and dismissing *without prejudice* even though plaintiff made "no distinction among the fourteen defendants").

neither the TCPA nor Rule 8 requires a plaintiff to present evidence establishing an agency relationship at the pleading stage. *See In re Dish Network*, 28 F.C.C.R. at 6593 ("we stress that nothing in this order requires a consumer to provide proof— at the time it files its complaint—that the seller should be held vicariously liable for the offending call."); *see also Platypus Wear, Inc. v. Clarke Modet & Co., S.L.*, 06-20976-CIV, 2008 WL 2557503, at *2, n. 5 (S.D. Fla. June 23, 2008) (*report and rec. adopted in part*, No. 06-20976-CIV, 2008 WL 2761300, at *2, n. 5 (S.D. Fla. July 15, 2008) ("claimants need not allege agency in order to satisfy notice-pleading requirements"). Rather, vicarious liability "must be alleged in the complaint" in the form of sufficient facts "to raise a reasonable expectation that discovery will reveal evidence" of vicarious liability. *Sarris*, 12-cv-80178, 2013 WL 5972173, at *7 (citing *In re Dish Network*, 28 F.C.C.R. at 6593; quoting *Twombly*, 550 U.S. at 556).[9] The FAC easily satisfies that requirement.

As discussed above (in § I.B), the FAC explicitly lays out VHA Inc.'s role in effectuating, directing, and/or benefiting from the "debt" collection calls at issue here. Specifically, Goldman alleges that Defendants—including VHA Inc.— provide various "healthcare-related debt collection" services "through Defendant

---

[9]     The *Sarris* court ultimately dismissed the plaintiff's claims in that case because the plaintiff had raised the theory of vicarious liability *for the first time in his summary judgment briefing*. *Sarris*, 2013 WL 5972173, at *7-8. But, that obviously is not the case here.

HSI," and that "VHA Inc.…plays a direct role in managing and directing HSI's business." (FAC ¶¶ 2, 22.) Goldman alleges further that each Defendant "work[s] directly for and through VHA Inc., and under [its] control," and that Defendants were at all times "aware that the [] telephone calls were being made….on their behalf." (*Id.* ¶¶ 15, 37.) Nothing more need be pleaded. *See Platypus Wear, Inc.*, 2008 WL 2557503, at *2 (finding vicarious liability to be adequately pled at the more stringent summary judgment stage where the complaint contends the defendants were "employee[s] and/or partner[s]," despite that there was "no distinct claim for vicarious liability"); *Legg v. Voice Media Grp., Inc.*, No. 13-62044-CIV, 2014 WL 2004383, at *4 (S.D. Fla. May 16, 2014) (finding that plaintiff gave defendant "notice that he asserts vicarious liability in his initial pleading" where the plaintiff pled that one party relied and benefitted from the other party's services).[10]

---

[10]     Defendants broadly reference *Smith v. State Farm Mut. Auto. Ins. Co.*, No. 13 C 2018, 2013 WL 5346430, at *2-6 (N.D. Ill. Sept. 23, 2013) in support of their assertion that Goldman must *specifically* allege "which theory of vicarious liability…applied" to satisfy Rule 8's pleading requirements. (VHA Inc. MTD at 16-17.) *Smith* holds no such thing. Rather, *Smith*—a case decided outside of this Circuit and with little persuasive authority—merely held that the plaintiff had "failed to sufficiently allege facts to support vicarious liability under Section 227(b) of the TCPA," *see id.* at *1, not that the plaintiff failed to or must state the specific theory of vicarious liability under which she sought to recover. Moreover, the *Smith* court specifically acknowledged that allegations such as those made by Goldman here would satisfy Rule 8. *Compare e.g., id.* at 3 (noting that the plaintiff

In the end, Goldman alleges facts sufficient to put Defendant VHA Inc. on notice of the TCPA claims it is called upon to meet and therefore, its arguments to the contrary should be rejected as well.[11]

### D.    The TCPA prohibits robo-calls to residential landlines, including debt collection calls like those at issue in this case.

As noted above, the TCPA expressly prohibits "initiat[ing] any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party," 47 U.S.C. § 227(b)(1)(B), precisely the conduct that Defendants are alleged to have engaged in here. Defendants' primary argument in support of dismissal is that debt collection calls to residential landlines are exempt from this prohibition. (VHA Inc. MTD at 12-15; VHA Georgia MTD at 9-13; HSI MTD at 4-8.) That argument misses the point. There is no exemption for *erroneous debt collection calls to non-debtors*, and that is the only type of landline call in question. As explained more fully below, while the TCPA allows the FCC to make limited exceptions to the statutory prohibition on robo-calls to residential landlines, the FCC has not—and

---

failed to state a claim (in one regard) because she did not allege that "State Farm had any authority over" the actual dialer of the calls); *with e.g.,* FAC ¶ 22 ("VHA Inc.…plays a direct role in managing and directing HSI's business").

[11]    Moreover, the existence of a principal-agent relationship is a fact-specific inquiry usually "resolved by the fact finder," and certainly not suited for a motion to dismiss. *See Platypus Wear, Inc.*, 2008 WL 2557503, at *2.

indeed, could not—exempt erroneous debt collection calls to non-debtors. Further, all of the cases cited by Defendants to support their argument are inapposite or impermissibly expand FCC rulings far beyond the intent and purpose of the TCPA. As such, the Court should reject Defendants' arguments in this regard and deny their motions to dismiss on this basis.

### 1. The FCC has not—and could not—exempt erroneous debt collection calls to non-debtors from Section 227(b)(1)(B)'s prohibition against robo-calls to residential landlines.

The TCPA includes only two express exceptions to § 227(b)(1)(B)'s prohibition against robo-calls to residential landlines, neither of which applies here. First, such calls may be made "for emergency purposes." 47 U.S.C. § 227(b)(1)(B). Clearly, the erroneous debt collection robo-calls to non-debtors at issue here do not constitute an emergency. Second, the TCPA expressly provides that calls may be "exempted by rule or order" of the FCC. *Id*. Here, as explained below, there is no rule or order of the FCC either expressly or implicitly exempting erroneous debt collection robo-calls to non-debtors.

### i. No FCC rule or order expressly exempts erroneous debt collection robo-calls to non-debtors.

Defendants claim that the FCC has "specifically" addressed and exempted prerecorded debt-collection calls—including those made to non-debtors—from liability, but this is *not* the case. Rather, acting under the powers granted to it under

20

the TCPA, in 1992 the FCC exempted (i) calls to landlines of consumers with whom the caller had an established business relationship,[12] and (ii) calls that do not include an "unsolicited advertisement and do not adversely affect residential subscriber rights." *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 7 F.C.C. Rcd. 8752, ¶ 36 (1992). As Defendants acknowledge, the FCC pointedly refused to create an express exemption for debt collection calls. *Id.* ¶ 39.

While, in so refusing, the FCC noted that debt collection calls were "adequately covered by [the other] exemptions," *id.*, and thus by implicitly exempting debt collection robo-calls to ***actual*** debtors, it is clear that the FCC did not once address the issue of ***erroneous*** debt collection calls to ***non-debtors*** at that time. Indeed, the FCC made clear that the only debt collection calls it was considering were those involving a prior express business relationship, in which the debtor expressly consented to such calls by providing the number at which to be reached in connection with the loan (or other debt) in question. *See In the Matter of the Tel. Consumer Prot. Act of 1991*, 7 F.C.C. Rcd. 2736, ¶ 16 (2002)

---

[12]   Notably, although the FCC at one time adopted the existing business relationship ("EBR") exemption to otherwise protect calls to residential landlines where the caller had a prior business relationship with the consumer, the FCC recently eliminated the EBR exemption, finding that it "adversely affected consumer privacy rights." *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1846-47 (2012).

(explaining that "*in all debt collection circumstances*, a prior or existing business relationship took place between the caller and the called party[,]" and thus categorizing "a debt collection call…[a]s a commercial call that does not adversely affect the privacy concerns the TCPA seeks to protect.") (emphasis added). Despite relying on the FCC's subsequent opinions, Defendants do not cite a single occasion in which the types of erroneous debt collection calls at issue here are explicitly addressed, nor does one exist. *See Watson v. NCO Group Inc.*, 462 F. Supp. 2d 641, 644 (E.D. Pa. 2006) (the FCC does "not directly address[] the issue of erroneous debt collection calls."); *Franasiak v. Palisades Collection LLC*, 822 F. Supp. 2d 320, 325 (W.D.N.Y. 2011) (noting the "significant concern that the FCC may not have adequately considered calls made to non-debtors who [do not] have [a prior business] relationship with collectors").[13] As such, the FCC has not expressly exempted erroneous debt collection robo-calls to non-debtors, the only type of calls at issue here.

---

[13]     Contrary to Defendants' suggestions, the FCC's subsequent opinions merely confirm that an express exemption for debt collection calls is not necessary. Not one expressly mentions debt collection calls to non-debtors. *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 F.C.C. Rcd. 12,391, 12,400 (1995); *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 23 F.C.C.R. 559, 561 (2008); *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. at 1834.

ii.    No FCC rule or order can be read as implicitly exempting erroneous debt collection robo-calls to non-debtors, because the TCPA narrowly limits the FCC's authority to create such exemptions.

While, as discussed above, no FCC rule or order expressly exempts erroneous debt collection robo-calls to non-debtors, neither can any FCC rule or order be read as *implicitly* exempting such calls either. Rather, Congress narrowly limited the FCC's exemption authority, and the FCC may only limit certain robo-calls "under paragraph 2(B)." 47 U.S.C. 227(b)(1)(B). Paragraph 2(B), in turn, limits the FCC's exemption authority exclusively to:

(i)    calls that are not made for a commercial purpose; and

(ii)    such classes or categories of calls made for commercial purposes as the Commission determines—

(I)    will not adversely affect the privacy rights that this section is intended to protect; and

(II)    do not include the transmission of any unsolicited advertisement….

47 U.S.C. 227(b)(2)(B). The FCC has no authority to create exemptions beyond those that satisfies these requirements. The erroneous debt collection robo-calls to non-debtors in question here *do* "adversely affect the privacy rights of the consumer," and thus cannot be exempted from the TCPA by the FCC.

Indeed, as the Supreme Court has noted, in enacting the TCPA, Congress

23

sought to generally protect consumers' privacy. *See Mims*, 132 S. Ct. at 744. To be sure, Congress's stated purpose was to "protect the privacy interests of residential telephone subscribers by placing restrictions on unsolicited, automated telephone calls to the home[.]" S. REP. 102-178, 1, 1991 U.S.C.C.A.N. 1968, 1968; *see also In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. at 1839 (explaining that "[w]hen adopting the TCPA," Congress found that "telephone subscribers considered automated or prerecorded telephone calls, regardless of the content or the initiator of the message, to be a nuisance and an invasion of privacy.") (citing 137 Cong. Rec. H11307 (Daily Ed. Nov. 26, 1991)). Additionally, it expressly noted the "legitimate" need to "impose greater restriction on automated calls than on calls placed by 'live persons.'" 7 F.C.C.R. 2740, at ¶ 25 (explaining that "automated telephone calls that deliver an artificial or prerecorded voice message are more of a nuisance and a greater invasion of privacy than calls placed by 'live' persons [as] automated calls cannot interact with the customer except in preprogrammed ways, [and] do not allow the caller to feel the frustration of the called party").

As such, repeated robo-calls to the homes of consumers like Goldman, merely because a debt-collector is trying to collect someone else's debt, adversely affects consumer privacy and is exactly the type of conduct that Congress sought to

stop with the TCPA. As another district court noted in refusing to dismiss similar

claims alleging erroneous debt collection robo-calls to non-debtors:

> by virtue of staying out of debt, a non-debtor has vastly greater
> privacy rights than someone who has fallen into debt. While the FCC
> has declared that a debtor's privacy rights are not adversely affected
> when he receives debt collection calls, the [c]ourt is convinced that a
> non-debtor's rights are in fact violated when he is subjected to
> repeated annoying and abusive debt collection calls that he remains
> powerless to stop.

*Watson*, 462 F. Supp. 2d at 644-45. Because such calls to non-debtors adversely

affect consumer privacy, the FCC may not exempt them from the TCPA, and no

FCC rule or order can therefore be read to do so. *See id.* at 645 (noting that

interpreting FCC orders as permitting robo-calls to non-debtors would render the

"will not adversely affect [TCPA] privacy rights" prong of FCC statutory

exemption authority superfluous).

Defendants' assertion that the FCC's promulgation of 47 C.F.R. §

64.1200(a)(3)(iii)—which exempts prerecorded landline calls from TCPA liability

if they are "made for a commercial purpose but do[ not] include or introduce an

advertisement or constitute telemarketing"— bars liability because it does not

expressly require that such call will "not adversely affect residential subscriber

rights" (VHA Georgia MTD at 10-13; VHA Inc. MTD at 12-5; HSI MTD at 4-8),

is unavailing. Because the TCPA—*a statute*—requires that exempted calls must

not adversely affect privacy rights, the absence of an identical requirement in 47 C.F.R. § 64.1200(a)(3)(iii)—*a regulation*—cannot be read as eliminating that requirement. *See, e.g., The Pittsburg & Midway Coal Mining Co. v. Dir., Office of Workers' Comp. Programs, U.S. Dep't of Labor,* 508 F.3d 975, 981 (11th Cir. 2007) ("Regulations cannot trump the plain language of statutes") (citations omitted); *see also id.* ("regulations, in order to be valid, must be [read] consistent[ly] with the statute under which they are promulgated.").

Further, not only can 47 C.F.R. § 64.1200(a)(3)(iii) not be read as exempting robo-calls that adversely affect consumer privacy (such as the erroneous debt collection robo-calls to non-debtors at issue here) because the TCPA forbids it, but also because it is clear that the FCC never intended the absence of express "adverse effect" language in the regulation to be read in such a manner. To be sure, at the time the FCC issued the regulation Defendants rely upon, it explicitly stated that it intended only to exempt commercial calls if, *inter alia*, they do not create an undue burden on privacy interests. *See In the Matter of the Tel. Consumer Prot. Act of 1991*, 7 F.C.C. Rcd. 2736, at ¶ 14 ("[T]he Commission proposes below to exempt from liability categories of auto dialer calls that were not intended to be prohibited by the TCPA ***and*** do not constitute…***an undue burden upon privacy interests***.") (emphasis added). Indeed, the FCC confirmed this intention in its

recent 2012 Order. *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. at 1833 (explaining that the FCC has the ability to provide an exemption for "calls for a commercial purpose that the Commission has determined will not adversely affect the privacy rights of the consumer"). Moreover, the absence of any explicit "adverse effect" language in 47 C.F.R. § 64.1200(a)(3)(iii) is understandable given that, at the time of the regulation's enactment, the FCC was not considering the situation of erroneous debt collection robo-calls to non-debtors in particular, and had simply determined that because "debt collection calls" stem from a prior existing relationship, they could not adversely affect the privacy concerns the TCPA seeks to protect. *See In the Matter of the Tel. Consumer Prot. Act of 1991*, 7 F.C.C. Rcd. 2736, at ¶ 16; *see also e.g. Hamlett v. Santander Consumer USA Inc.,* 931 F. Supp. 2d 451, 456 (E.D.N.Y. 2013) (stating that it would be "difficult to imagine how [47 C.F.R. § 64.1200(a)(3)(iii)'s] exemption would apply to [plaintiff, a non-debtor] who was not a signatory to the loan").

To summarize: while the TCPA allows the FCC to exempt certain robo-calls from the statute's general prohibition on calls to residential telephone lines, no rule or order of the FCC expressly addresses or exempts from liability erroneous debt collection robo-calls to non-debtors. Further, the TCPA expressly limits the FCC's

authority to exempt such calls in any event. Specifically, with respect to calls for commercial purposes, the FCC may only exempt robo-calls that do not adversely affect the privacy rights that the statute was intended to protect. But because erroneous debt collection robo-calls to non-debtors *do* adversely affect the privacy rights that the TCPA was intended to protect, no rule or order of the FCC (including 47 C.F.R. § 64.1200(a)(3)(iii)) can be read as implicitly exempting such calls. Thus, because the FCC has neither explicitly nor implicitly exempted the robo-calls at issue here, Defendants' motions to dismiss should be denied.

### 2. *The cases Defendants rely upon are inapposite and distinguishable in any event.*

Moreover, the cases on which Defendants rely do not support their position that erroneous debt collection calls to non-debtors have been exempted from the TCPA's prohibition on robo-calls. For example, while *Meadows v. Franklin Collection Serv., Inc.*, 414 Fed. Appx. 230 (11th Cir. 2011)—an unpublished opinion on which Defendants rely heavily—involved debt collection robo-calls to a non-debtor, the actual debtors from whom defendants sought to collect were the non-debtor's daughter (who lived with the non-debtor), and the family that had previously owned the non-debtor's telephone number. *Id.* at 232. Many of the other cases relied on by Defendants similarly involve non-debtors with some sort of relationship to the intended recipient of the debt collection robo-call. *See, e.g.*,

*Rantz-Kennedy v. Discover Fin. Serv.*, No. CCV-12-2853, 2013 WL 3167912 (D.
Md. June 20, 2013), *aff'd*, 544 F. App'x 183 (4th Cir. 2013) (calls made to non-
debtor's husband); *Corson v. Accounts Receivable Mgmt., Inc.*, No. 13-01903,
2013 WL 4047577 (D. N.J. Aug. 9, 2013) (debt belonging to plaintiff's
daughter).[14]

    Here, in contrast, neither Goldman nor anyone residing in his household had
any relationship with, or owed a debt to, Defendants. (FAC ¶ 31.) Rather,
Defendants obtained Goldman's telephone number without his consent, using
investigative methods such as skip tracing and number trapping. (*Id.* ¶¶ 25-26.)
Furthermore and unlike in *Meadows*, for example, each of the calls Goldman
received were automated, did not allow him to connect to a live representative, and
left him with no means of stopping them. *Compare id.* ¶¶ 34 *with Meadows*, 414
Fed. App'x at 232.[15]

---

[14]    Many of the other cases relied on by Defendants are distinguishable on other
grounds. *See e.g., Hoover v. Monarch Recovery Mgmt., Inc.*, 888 F. Supp. 2d 589,
605 (E.D. Pa. 2012) (agreeing that the privacy analysis in *Watson* was necessary,
but finding that the plaintiff had not suffered an "adverse privacy affect," as she
failed to allege that she attempted to, or "remain[ed] powerless to stop[,]" the
defendants' calls).

[15]    In *Meadows*, the court held that "[b]ecause [defendant] had an existing
business relationship with the intended recipient of its prerecorded calls, and the
calls were made for a commercial, non-solicitation purpose, [the] calls [we]re
exempt from the TCPA's prohibitions of prerecorded calls to residences." 414 Fed.
App'x at 235. Defendants here cite cases that seize on the second clause of this

In short, under Defendants' view, they could robo-call any (and therefore every) phone number in the country, and then go unpunished when their random calls are received by individuals from whom a debt was never owed. Such invasions of privacy are exactly the kind of injury Congress intended to prevent by enacting the TCPA. Thus, the Court should reject Defendants' arguments in this respect as well.

## II.  Defendants' 12(b)(1) Standing Arguments Likewise Fail—Goldman Sufficiently Alleges that VHA Inc. and VHA Georgia Caused Him an Injury that is Fairly Traceable to Their Actions.

Finally, VHA Inc., and in a passing footnote, VHA Georgia, separately argue that dismissal is warranted under Rule 12(b)(1), because Goldman lacks Article III standing to assert claims against them. (VHA Inc. MTD at 7; VHA Georgia MTD at 9, FN 3.) Specifically, although neither challenge the fact that Goldman suffered an "injury in fact" or that his injury is capable of redress by a

---

language from *Meadows* to support a theory that debt collection calls to non-debtors are exempt merely because they were made for commercial, non-solicitation purposes. *See, e.g., Santino v. NCO Fin. Sys., Inc*., No. 09-CV-982-JTC, 2011 WL 754874, *5 (W.D.N.Y. Feb. 24, 2011) (relying on *Meadows* as a basis to exempt non-debtor collection calls); *Corson*, 2013 WL 4047577, at *9 (D. N.J. Aug. 9, 2013) (same). As the Eleventh Circuit's recent decision in *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242 (11th Cir. 2014) makes clear, however, those cases are not persuasive here. *Osorio* characterized *Meadows* as being "of very limited value," and described it as holding that a debt collector did not violate the TCPA because it had an *existing business relationship with the intended recipient of its robo-calls*—without mention of the call's non-solicitation purpose. 746 F.3d at 1250.

decision in his favor, they contend that Goldman fails to allege *any* connection between his injury—the calls he received—and their respective actions. Defendants are wrong once again.

The "fairly traceable" component of Article III standing "examines the causal connection between [Defendant's] unlawful conduct and the alleged injury...." *Dekalb Cnty. v. HSBC N. Am. Holdings, Inc.*, No. 1:12-CV-03640-SCJ, 2013 WL 7874104, at *4 (N.D. Ga. Sept. 25, 2013) (citing *Allen v. Wright*, 468 U.S. 737, 753 n. 19 (1984)). Contrary to Defendants' assertion, this causation requirement does not require Goldman to allege that Defendants personally committed the act that caused him harm, but rather, only that his injury is "fairly traceable" to some conduct for which the they may be held liable—directly or otherwise. *See id.* ("traceability does not mean that plaintiffs must show to a scientific certainty that defendant's effluent…caused the precise harm suffered by the plaintiffs.") (internal citation omitted); *see also Williams v. Scott*, No. 1:13-CV-3567-TWT, 2014 WL 916556, at *4 (N.D. Ga. Mar. 7, 2014) (finding the "fairly traceable" causation element of Article III's standing requirement to be satisfied where the plaintiff argued that defendant "[wa]s vicariously liable for the acts of his co-[d]efendants"). As such, in the context of the TCPA—which imposes both direct and vicarious liability, *see In re Dish Network*, 28 F.C.C.R. 6574—in order

to satisfy Article III's "fairly traceable" requirement, Goldman must merely allege facts sufficient to demonstrate that VHA Inc. can be held vicariously liable for his injury, *see Agne v. Papa John's Intern., Inc.*, 286 F.R.D. 559 (W.D. Wash. 2012), which as discussed above, he has done.

The *Agne v. Papa John's* case is instructive on this point. In *Agne*, the plaintiff alleged that the defendants—Papa John's International, Papa John's USA, a group of their independent franchisees, and various third-party marketers they hired—violated the TCPA by sending unsolicited text messages to consumers throughout the country. 286 F.R.D. at 561. Papa John's International and Papa John's USA claimed that Article III standing was lacking because the text messages were sent "entirely without the[ir] involvement[,]" and thus were not "fairly traceable" to their actions. *Id.* at 564. In rejecting this argument, the Court found that because the plaintiff claimed that Papa John's "directed, encouraged, and authorized its franchisees to use [the third-party marketers'] services[,]" plaintiff had alleged that "both direct[] and vicarious[]" liability, and therefore, "an injury that is fairly traceable to Papa John's." *Id.* at 562-64.

As in *Agne*, despite VHA Inc. and VHA Georgia's assertion that they have "no involvement" with the robo-calls at issue, as discussed above, the FAC clearly sets forth facts demonstrating that they can both be held vicariously liable for the

robo-calls at issue. (*See* FAC ¶ 22 (alleging that "Defendant VHA Inc., through its local office VHA Georgia, plays a direct role in managing and directing" HSI's debt collection); ¶ 47 (alleging that "[b]y making, or having made on its behalf, unsolicited robo-calls using an artificial or prerecorded voice…Defendants violated 47 U.S.C. § 227(b)(1)(A)(iii) and 47 U.S.C. § 227(b)(1)(B).") *See Agne*, 286 F.R.D. at 561-64; *see also Manno*, 289 F.R.D. at 682 (finding plaintiff's allegation that defendants "violated [the TCPA was] enough to confer upon him standing under Article III."). To be sure, given Rule 8's liberal pleading standards, the "precise nature of [Defendants'] involvement" need not be "definitively established" at this early juncture. *Agne*, 286 F.R.D. at 563.

As such, VHA Inc.'s and VHA Georgia's 12(b)(1) standing arguments are unpersuasive and should stand as basis to dismiss Goldman's claims.

## CONCLUSION

For the foregoing reasons, Plaintiff Marshall Goldman respectfully requests that the Court (i) deny Defendants' Motions to Dismiss in their entirety and (ii) provide such other and further relief as this Court deems reasonable and just.

Respectfully submitted,

**MARSHALL GOLDMAN**, individually
and on behalf of all others similarly situated,

Dated: June 24, 2014                    By:   /s/ Eve-Lynn J. Rapp

33

One of Plaintiff's Attorneys

Rafey S. Balabanian (*Pro hac vice*)
rbalabanian@edelson.com
Benjamin H. Richman (*Pro hac vice*)
brichman@edelson.com
Eve-Lynn J. Rapp (*Pro hac vice*)
erapp@edelson.com
Courtney C. Booth (*Pro hac vice*)
cbooth@edelson com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

Jennifer Auer Jordan
Georgia Bar No. 027857
THE JORDAN FIRM, LLC
1447 Peachtree Street, N.E., Suite 880
Atlanta, Georgia 30309
Tel: 404-873-4720
Fax: 404-872-3725

## <u>CERTIFICATE OF COMPLIANCE</u>

In compliance with LR 7.1D, N.D. Ga., I certify that the foregoing ***Plaintiff Marshall Goldman's Combined Response in Opposition to Defendants' Motions to Dismiss*** has been prepared in conformity with LR 5.1, N.D. Ga. This memorandum of law was prepared with Times New Roman (14 point) type, with a top margin of one and one-half (1 1/2) inches and a left margin of one (1) inch. This memorandum of law is proportionately spaced.

Plaintiff Goldman has failed a motion with the Court seeking leave to file an combined opposition brief in response to Defendants' Motions that exceeds the Court's 25-page limit.

/s/ Eve-Lynn J. Rapp

## <u>CERTIFICATE OF SERVICE</u>

      I, Eve-Lynn J. Rapp, an attorney, hereby certify that on June 24, 2014, I served the above and foregoing ***Plaintiff Goldman's Combined Response in Opposition to Defendants' Motions to Dismiss***, by causing a true and accurate copy of such paper to be filed and transmitted to all counsel of record via the Court's CM/ECF electronic filing system, on this the 24th day of June, 2014.


                        /s/ Eve-Lynn J. Rapp

# EXHIBIT 1

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DONALD VISSER,               )
              Plaintiff,     )
                             )        No. 1:13-cv-1029
-v-                          )
                             )        HONORABLE PAUL L. MALONEY
CARIBBEAN CRUISE LINES, INC. and )
ROBERT MITCHELL,             )
              Defendants.    )
_____ )

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT CCL'S MOTION TO DISMISS
### and
### GRANTING DEFENDANT MITCHELL'S MOTION TO DISMISS

Plaintiff Donald Visser alleges he received unsolicited, prerecorded, robocalls from Defendant Caribbean Cruise Lines. Visser filed the complaint in District Court 62-A for the State of Michigan. Defendants Caribbean Cruise Lines ("CCL") and Robert Mitchell (collectively "Defendants") filed a notice of removal, asserting that federal jurisdiction is proper under 28 U.S.C. § 1331, as the complaint alleged a violation of federal law, the Telephone Consumer Protection Act ("TCPA"). After removal, Visser promptly filed a first amended complaint, alleging claims for class actions.[1]  (ECF No. 5 "Complaint.")

Before this Court are two motions to dismiss, one by Defendant CCL (ECF No. 6) and one by Defendant Mitchell (ECF No. 7). Visser filed a single response, addressing the arguments in both motions. (ECF No. 8.) Defendants filed a joint reply. (ECF No. 16.)  A hearing on the two motions occurred on March 24, 2014.

In the amended complaint, Visser alleges four claims. First, Visser alleges a violation of the

---

[1]As the first amended complaint controls the lawsuit, it will be referred to as the complaint.

TCPA on behalf of a class of residential phone users. Second, Visser alleges a violation of the TCPA on behalf of a class of cellular telephone users. Third, Visser alleges a violation of the Michigan Home Solicitation Sales Act ("MHSSA"), on behalf of a subclass of Michigan residents. Finally, Visser alleges a violation of the Michigan Consumer Protection Act ("MCPA"), on behalf of a subclass of Michigan residents.

The two motions to dismiss raise largely identical issues. Defendants argue the lawsuit should be dismissed for four reasons: (1) lack of personal jurisdiction over each defendant under Rule 12(b)(2), (2) failure to state a claim under Rule 12(b)(6) because the complaint fails to distinguish between the two defendants, (3) failure to state either a federal or a state law claim under Rule 12(b)(6) because the complaint relies on conclusory assertions without any specific facts, and (4) failure to adequately plead a basis for class action.

## COMPLAINT

Visser's complaint makes the following factual assertions that form the bases for his causes of action.

8. Defendants do business within the state of Michigan and are thus within the jurisdiction of this Court.

10. Defendants solicit customers within the State of Michigan by way of telemarketing or voice broadcasting.
11. Voice broadcasting involves the transmission of pre-recorded messages to thousands and sometimes millions of telephone numbers without the prior express consent of the recipient.
12. Plaintiff and Class members have been contacted on his/their personal residential and/or cellular telephone by Carribean Cruise Line, Inc. and/or its agent for the purpose of soliciting the sale of a cruise.
13. The contacts referenced in the preceding paragraph was [sic] initiated by Defendants by ways of voice broadcasting.
14. By information and belief, Robert P. Mitchell, as an officer of the Caribbean Cruise Line, Inc., caused these calls to be made.
15. The manner and method of the contacts referred to in the above paragraphs

included the use of a pre-recorded message as part of a telephone solicitation.

**Count 1**

33.  Plaintiff and Class members did not expressly consent prior to receiving the telephone call complained of from Defendants.

34.  Defendants made, or caused to be made, telephone calls to Plaintiff and Class members using an artificial or prerecorded voice to Plaintiff at his residential number in violation of the TCPA.

**Count 2**

39.  Defendants made, or caused to be made, telephone calls, which did not comply with the requirements of 47 U.S.C. § 227(d)(3)(A), to Plaintiff and Class members at their residential numbers, in violation of the TCPA.

43.  Defendants made, or caused to be made, pre-recorded and/or artificial telephone calls to Plaintiff and Subclass Member's cellular telephones in violation of 47 U.S.C. §227(b)(1)(A)(iii).

44.  Defendants did willfully and knowingly violate the provisions of the TCPA by using an artificial and prerecorded voice to solicit Plaintiff and Class members at their cellular telephones.

45.  Defendants made, or caused to be made, telephone calls, which did not comply with the requirements of 227(b)(1)(A)(iii), to Plaintiff and Class members at their cellular numbers, in violation of the TCPA.

**Count 3**

49.  Defendants made, or caused to be made, telephone solicitations to Plaintiff and the Michigan Subclass which consisted of a recorded message, violating the MHSSA.

51.  During the course of their solicitations to Plaintiff and members of the Michigan Subclass, Defendants failed to state the information required by MCL 445.111b(1), violating the MHSSA.

53.  Defendants offered prizes such as "free cruise" to Plaintiff and members of the Michigan Subclass for which a payment was later demanded as necessary to receive the prize.

**Count 4**

58.  The telephone solicitations made by Defendants to Plaintiff and members of the Michigan Subclass constitute violations of the Michigan Consumer Protection Act (MPCA), MCL 445.901 *et seq.*

(Compl.)

## STATE LAW

When a federal court exercises subject-matter jurisdiction over a complaint on the basis of a federal question, supplemental state law claims are resolved by applying the law of the forum state. *See United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1996).  When a federal court applies state law, the court "must follow the decisions of the state's highest court when that court has addressed the relevant issue."  *Kepley v. Lanz*, 715 F.3d 969, 972 (6th Cir. 2013) (involving application of state law in a diversity action).  Where the state's supreme court has not weighed in on the issue, federal courts must anticipate how the state's supreme court would rule by considering "all available data, including the decisional law of the state's lower courts."  *Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 517 (6th Cir. 2001).  "'Where a state's highest court has not spoken on a precise issue, a federal court may not disregard a decision of the state appellate court on point, unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.'  This rule applies regardless of whether the appellate court decision is published or unpublished."  *Id.* (citations omitted).

### PERSONAL JURISDICTION - BURDEN OF PROOF

A motion under Fed. R. Civ. P. 12(b)(2) challenges the exercise of personal jurisdiction over the defendant.  The plaintiff bears the burden of establishing personal jurisdiction.  *Schneider v. Hardesty*, 669 F.3d 693, 697 (6th Cir. 2012); *Air Prods. and Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007) (citing *Serras v. First Tennessee Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989)); *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S 178, 189 (1936)). When a district court opts to rule on

the pleadings alone, the plaintiff's burden consists of making a *prima facie* case that personal jurisdiction exists. *Schneider*, 669 F.3d at 697 (quoting *Serras*, 875 F.2d at 1214). When the district court conducts an evidentiary hearing, the plaintiff must show personal jurisdiction under the preponderance of the evidence standard. *Id.* (quoting *Serras*). "The court has discretion to select which method it will follow, . . . . However, the method selected will affect the burden of proof the plaintiff must bear to avoid dismissal." *Theunissen,* 935 F.2d at 1458 (6th Cir. 1991) (citation and internal citation omitted).

The Sixth Circuit Court of Appeals has repeatedly stated that "in the face of a properly supported motion for dismissal, the plaintiff may not stand on his pleadings, but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *Theunissen*, 935 F.2d at 1458 (citing *Weller v. Cromwell Oil Co.*, 504 F.2d 927, 930 (6th Cir. 1974)); *see Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 449 (6th Cir. 2012) (quoting *Theunissen*); *See, Inc. v. Imago Eyewear Pty, Ltd.*, 167 F.App'x 518, 521 (6th Cir. 2006) (quoting *Theunissen*). Put another way, "[i]f the court rules on written submissions alone, the plaintiff may not rest on his pleadings to answer the movant's affidavits, but must set forth, 'by affidavit or otherwise [,] . . . specific facts showing that the court has jurisdiction. *Serras*, 875 F.2d at 1214 (quoting *Weller*) (alterations in *Serras*).

When the court decides the motion on written submissions, it "must consider the pleadings and affidavits in the light most favorable to the plaintiff." *Serras*, 875 F.2d at 1214 (quoting *Welsh v. Gibbs*, 631 F.2d 436, 439 (6th Cir. 1980)); *see Air Prods.*, 503 F.3d at 549; *Theunissen*, 935 F.2d at 1459 (citing *Serras* and *Welsh*). "In sharp contrast to summary judgment procedure, however, the court disposing of a 12(b)(2) motion does not weigh the controverting assertions of the party

seeking dismissal." *Theunissen*, 935 F.2d at 1459 (citing *Serras*, 875 F.2d at 1214); *see Air Prods.*, 503 F.3d at 549. By not considering the moving party's controverting assertions, non-resident defendants are prevented from "regularly avoiding personal jurisdiction simply by filing an affidavit denying all jurisdictional facts." *Theunissen*, 935 F.2d at 1459 (citing *Serras*, 875 F.2d at 1214). The court does not weigh disputed facts, but considers the pleadings in the light most favorable to the plaintiffs, although the undisputed assertions of the defendant may also be considered. *Conn v. Zakharov*, 667 F.3d 705, 711 (6th Cir. 2012). "Dismissal [is] only proper if all of the specific facts [the non-moving party] allege[s] collectively fail[] to state a *prima facie* case for jurisdiction under the appropriate standards." *Theunissen*, 935 F.2d at 1459. This prima facie burden is "relatively slight." *Air Prods.*, 503 F.3d at 549 (quoting *American Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169 (6th Cir. 1988)).

Visser's burden to show personal jurisdiction will be evaluated in the lighter *prima facie* standard. *See Miller v. AXA Winterhtur Ins. Co.*, 694 F.3d 675, 678 (6th Cir. 2012) (involving the identical situation where this Court held a hearing, but did not order discovery and did not take additional evidence at the hearing). The parties did not conduct limited discovery for the purpose of the personal jurisdiction issue. Oral argument on the motions occurred, but the Court did not order an evidentiary hearing and no evidence was presented by the parties. The only submissions the Court will consider are those attached to the motion and response.

## PERSONAL JURISDICTION - ELEMENTS

A federal court may find personal jurisdiction based on the defendant's continuous and systematic contacts with the forum state (general jurisdiction), or when the plaintiff's claim arises out of or relates to the defendant's contact with the forum state (specific jurisdiction). *Miller*, 694

F.3d at 678-79.  For general jurisdiction, a defendant's continuous and systematic conduct within

the state renders the defendant amendable to the lawsuit in the state, *Nationwide Mut. Ins. Co. v.*

*Tryg Int'l Ins. Co., Ltd.*, 91 F.3d 790, 793 (6th Cir. 1996), regardless of where the cause of action

arose, *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 888 (6th Cir. 2002).  However, in

order for a court to find specific jurisdiction over a defendant, the court must consider both the

forum state's long-arm statute and constitutional due process.  *Miller*, 694 F.3d at 679.  For a court

to exercise personal jurisdiction over a non-resident defendant, the plaintiff's cause of action must

arise out of or be related to the defendant's contacts with the forum state.  *Nationwide*, 91 F.3d at

793.

## A.  General Personal Jurisdiction

The Michigan legislature has enacted statutes outlining when a court may exercise general

jurisdiction over individuals and corporations.  Michigan's general jurisdiction statute for

individuals provides as follows.

> The existence of any of the following relationships between an individual and the
> state shall constitute a sufficient basis of jurisdiction to enable the courts of record
> of this state to exercise personal jurisdiction over the individual or his representative
> and to enable such courts to render personal judgments against the individual or
> representative.
> (1) Presence in the state at the time when process is served.
> (2) Domicile in the state at the time when process is served.
> (3) Consent, to the extent authorized by the consent and subject to the limitations
> provided in section 745.

Mich. Comp. Laws § 600.701 (West, Westlaw current through 2014 Pub. Acts No. 33).  The general

jurisdiction statute for corporations is similar, providing for jurisdiction for entities (1) incorporated

under the laws of Michigan, (2) which have consented to jurisdiction, and (3) which have carried

on a continuous and systematic part of its general business within Michigan.  *Id.* § 600.711 (West,

7

Westlaw current through 2014 Pub. Acts No. 33).  The Sixth Circuit has found the exercise of general jurisdiction appropriate where the defendant retained an independent sales representative in the state, conducted mail order solicitations of Michigan businesses, made over 400 sales in Michigan totaling over $625,000 over two years, and made at least one sale in Michigan each and every month for two consecutive years.  *E.g., Michigan Nat'l Bank v. Quality Dinette, Inc.*, 888 F.2d 462, 466 (6th Cir. 1989).

Through a sworn declaration, Mitchell states that he is not a resident of Michigan, does not own or possess real or personal property in Michigan, has no bank accounts in Michigan, and does not transact business in Michigan.  (ECF No. 6-1 "Mitchell Dec." ¶¶ 3-6 PgID 56-58.)  Mitchell further states that CCL is a Florida corporation with no real estate, bank accounts, offices, employees or agents in Michigan.  (*Id.* ¶¶ 8-9.)  Mitchell admits that CCL contacts Michigan residents by direct mailing and telephone calls, but denies that CCL made the telephone call or calls mentioned in the complaint.  (*Id.* ¶¶ 11-12.)

Viewing the record in the light most favorable to Visser, Visser has not established a *prima facie* case for exercising general jurisdiction over Defendants.  Visser has not identified any legal authority indicating that making telephone calls and sending direct mail to Michigan residents, by themselves, constitutes the carrying on of continuous and systematic business within Michigan.  *Michigan National Bank*, one case that involved mail order solicitations of Michigan business, also involved routine sales over two years and a physical presence within the state.  Visser has not alleged nor established actual sales by Defendants, routine sales over time, or a physical presence within the state.  The holding in *Michigan National Bank* does not indicate what contacts would be minimally necessary for a court to exercise general personal jurisdiction.

8

The evidence Visser presents in response is consistent with Mitchell's declaration. Visser asks the Court to infer that CCL has made a substantial number of telephone calls to Michigan based on a statement in an order issued by the Federal Trade Commission ("FTC"). (Pl. Resp. 6 PgID 93.) On May 9, 2013, the FTC issued an order denying a petition filed by CCL to limit or quash a civil investigation demand. (ECF No. 8-3 Pl. Ex. 3 "FTC Order.") In that order, the FTC stated that, in 2012, it received "thousands of complaints" about an unsolicited robocall. (*Id.* 1 PgID 133.) Visser also points to a declaration attached to CCL's petition to the FTC. In the declaration, Jennifer Poole, the Marketing Director for CCL, states that the information sought by the FTC will "require the search of several tens of thousands of electronic mails," (ECF No. 8-4 Pl. Ex. 4 "Poole Dec." ¶ 5 PgID 187), and will require CCL to "examine potentially millions of pages of documents" (*id.* ¶ 6 PgID 187). From this evidence, Visser argues "[i]n light of the other millions of calls and the fact that Plaintiff and his spouse have received multiple calls from CCL, and, it is logical to deduct that at least a substantial number of those calls were made to Michigan telephones." (Pl. Resp. 6 PgID 133.) Although a dubious conclusion, the Court will assume, for the sake of argument only, that the evidence identified in Visser's response actually supports his inference. At best, this conclusion results in what CCL admitted, that it makes lots of telephone calls, including telephone calls to Michigan residents. Standing alone, this fact does not allow a Court to exercise general jurisdiction over a non-resident defendant under the general jurisdiction statute. The evidence does not establish continuous and systematic conduct within the state.

## B. Limited Personal Jurisdiction

Michigan's long-arm statute covers a broad array of individual and corporate activities. Under the long-arm statute for individuals,

> [t]he existence of any of the following relationships between an individual or his agent and the state shall constitute a sufficient basis of jurisdiction to enable the courts of this state to exercise limited personal jurisdiction over the individual and to enable such courts to render personal judgments against the individual or his representative arising out of an act which create any of the following relationship:
> (1) The transaction of any business within the state.
> (2) The doing or causing to be done, or consequence to occur, in the state resulting in an action for tort.
> (3) The ownership, use, or possession of any real or tangible personal property situated within the state.
> (4) Contracting to insure any person, property, or risk located within the state at the time of contracting.
> (5) Entering into a contract for services to be performed or for materials to be furnished in the state by the defendant.
> (6) Acting as a director, manager, trustee, or other officer of a corporation incorporated under the laws of, or having its principal place of business within this state.
> (7) Maintaining a domicile in this state while subject to a marital or family relationship which is the basis of the claim for divorce, alimony, separate maintenance, property, settlement, child support, or child custody.

Mich. Comp. Laws ¶ 600.705 (West, Westlaw current through 2014 Pub. Acts No. 21). The long-arm statute for corporations is largely identical, with the omission of subsections (6) and (7). *See* Mich. Comp. Laws § 600.715 (West, Westlaw current through 2014 Pub. Acts No. 21). Once a court concludes the defendant's activities subject it to personal jurisdiction under Michigan's long-arm statute, the court must then consider whether the exercise of personal jurisdiction comports with due process. *Green v. Wilson*, 565 N.W.2d 813, 816-17 (Mich. 1997). "The long-arm statute is coextensive with due process insofar as the statute is limited by due process, and, therefore, the statute and due process share the same outer boundary." *Id.* at 816.

Constitutional due process for personal jurisdiction is determined by three factors: (1) the defendant must purposefully avail itself of the privilege of acting in the forum state or causing a consequence in the forum state, (2) the cause of action must arise from the defendant's activities in the forum state, and (3) the acts of the defendant or consequences caused by the defendant must have

a substantial enough connection with the forum state to make the exercise of personal jurisdiction reasonable. *Miller*, 694 F.3d at 680 (quoting *S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968)). All three factors must be met for a court to exercise personal jurisdiction. *Id.* (citing *LAK, Inc. v. Deer Creek Enters.*, 885 F.2d 1293, 1303 (6th Cir. 1989)).

The "constitutional touchstone" of due process is whether the defendant has purposefully established minimum contacts in the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 (1985). "The 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as the result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or third person[.]'" *Id.* at 475 (internal citations omitted). A court may exercise jurisdiction over a foreign defendant when the defendant's actions create the connection within the state or the defendant has created continuing obligations with residents of the state. *Id.* at 475-76.

The Sixth Circuit has stated that "making phone calls and sending facsimiles into the forum, standing alone, may be sufficient to confer jurisdiction on the foreign defendant where the phone calls and faxes form the bases for the action." *Neal v. Janssen*, 270 F.3d 328, 332 (6th Cir. 2001). The court explained "[w]hen the actual content of the communications into the forum gives rise to an intentional tort action, that alone may constitute purposeful availment. It is the quality of the contacts, not the quantity, that determines whether they constitute 'purposeful availment.'" *Id.*; *see Schneider*, 669 F.3d at 702; *Intera Corp. v. Henderson*, 428 F.3d 605, 616 (6th Cir. 2005); *see also Calphalon Corp. v. Rowlette*, 228 F.3d 718, 722 (6th Cir. 2000) (finding no personal jurisdiction over a nonresident defendant). A physical presence within the state is not necessary for a court to exercise jurisdiction as an "inescapable fact of modern commercial life" is that business can and is

11

conducted remotely, often by telephone and the internet. *See Burger King*, 471 U.S. at 476.

In *Neal*, the Tennessee-based plaintiffs were selling a horse that was boarded in the Netherlands. The defendant Janssen was a citizen of Belgium, who owned property in Florida. The parties arranged for Janssen to act as plaintiffs' agent for the sale of the horse, with Janssen receiving ten percent of the sale. Janssen made telephone calls and sent faxes to plaintiffs in Tennessee, but had no other contacts with Tennessee. Although plaintiffs thought they could get as much as $500,000, Janssen convinced them to sell the horse for approximately $312,000, for which he would take no commission. The money from the sale was transferred to plaintiffs in Tennessee from Janssen. The plaintiffs sued after learning that the buyer paid Janssen $480,000 for the horse. The court found that the telephone calls and faxes, which contained the false information that formed the bases for the complaint, were sufficient to establish the purposely availed factor. The court concluded

> the actions of sending false information into Tennessee by phone and fax had foreseeable effects in Tennessee and were directed at individuals in Tennessee. These false representations are the heart of the lawsuit – they were not merely incidental communications sent by the defendant into Tennessee.

*Neal*, 270 F.3d at 332. The court also distinguished the communication from contacts by out-of-state defendants which were attempts to start business relationships. *Id.* at 333.

In *Schneider*, the defendant Hardesty, a resident of Utah, solicited the plaintiff Schneider, a resident of Ohio, to participate in an investment program. The money Schneider invested was later frozen by the SEC for being part of a ponzi scheme. Hardesty hired an attorney licensed in Utah who, at Hardesty's direction, drafted and sent two letters to those individuals who had invested money with Hardesty. Schneider later sued Hardesty, alleging that the two letters contained false and misleading statements. Following *Neal*, the court found that the two letters formed the basis for

the lawsuit and satisfied the purposefully availed factor of the constitutional due process analysis. *Schneider*, 669 F.3d at 702-03.

The "arising from" prong is met when the critical facts of the plaintiff's claim arise from the defendant's contacts with the state. *Intera Corp.*, 428 F.3d at 617 (quoting *Caphalon Corp.*, 228 F.3d at 723). The Sixth Circuit has described the test asking whether "the causes of action were 'made possible by' or 'lie in the wake of' the defendant's contacts or whether the causes of action are 'related to' or 'connected with' the defendant's contacts with the forum state." *Air Prods.*, 503 F.3d at 553 (internal citation and citations omitted). The "arising from" prong is evaluated under a lenient standard. *Schneider,* 669 F.3d at 703 (citation omitted).

If the first two prongs of the due process test are satisfied, an inference arises that the reasonableness prong is also satisfied. *Intera Corp.*, 428 F.3d at 618 (citation omitted). For the exercise of jurisdiction to be constitutionally reasonable, the acts of the defendant, or the consequences of the defendant's acts, must have a substantial connection to the forum state. *Intera Corp.*, 428 F.3d at 618 (citation omitted). When determining whether exercising personal jurisdiction over a nonresident defendant is reasonable, courts consider several factors, including: (1) the burden on the defendant, (2) the interest of the forum state, (3) the plaintiff's interest in obtaining relief, and (4) other states' interest in securing the most efficient resolution of the controversy. *Id.* (citation omitted).

### 1. General Appearance by Counsel

Personal jurisdiction is a due process right that may be waived, either explicitly or implicitly. *Gerber v. Riordan*, 649 F.3d 514, 518 (6th Cir. 2011) (quoting *Days Inn Worldwide v. Patel*, 445 F.3d 899, 905 (6th Cir. 2006)). Visser argues, when counsel filed general appearances on behalf of

13

both defendants, Defendants waived the personal jurisdiction defense. Visser relies on, among other cases, *Gerber*.

The appearance filed by Kirsten Guinn on behalf of defendants on September 25, 2013, was not a general appearance waiving an objection to the exercise of personal jurisdiction. The holding in *Gerber* does not apply to the situation here. In *Gerber*, the plaintiff sued an individual and a corporation. After the plaintiff filed a motion to stay in favor of mediation and a motion for entry of default, the defendants filed a pro se motion to dismiss for lack of personal jurisdiction. Because corporations must be represented by counsel, the district court directed the defendants to show cause why default should not be entered for failure to secure an attorney for the corporate defendant, and later entered a default judgment. The defendants subsequently retained an attorney, who filed a general appearance on their behalf. Defense counsel filed several motions, including motion to stay and a motion to vacate the default judgment. Defense counsel filed an opposition to motion for mediation. Defense counsel also participated in a case management conference, consented to jurisdiction by a magistrate judge, and moved for an extension of time to file discovery response. Almost one and a half years after counsel filed the general appearance, the defendants filed a motion to dismiss for lack of personal jurisdiction, which was granted. The Sixth Circuit reversed. The circuit court discussed the various submissions to the court by the defendants, addressing whether each resulted in the waiver of a personal jurisdiction defense. Although the court concluded that not all of the submissions constituted a waiver, such as the motion to stay and the motion to vacate default judgment, it held that "at the end of the day we find that Defendants did waive their personal jurisdiction defense when their attorney entered a general appearance with the district court[.]" *Gerber*, 649 F.3d at 519. In a concurrence, Judge Moore agreed with the majority that the

14

defendants had waived the defense by participating in the litigation, but disagreed with "the majority's conclusion that the critical point here was the defendants' counsel's filing of an Entry of Appearance - a one-sentence announcement of the identity of the defendants' attorney of record." *Id.* at 520 (Moore, C.J. concurring).  The holding in *Gerber* was recently affirmed in *M&C Corp. v. Erwin GmbH & Co.,* 508 F.App'x 498, 510 (6th Cir. 2012) (explaining that, under *Gerber*, courts are required "to exercise personal jurisdiction whenever a defendant's attorney enters a general appearance.").

Unlike both *Gerber* and *M&C Corp.*, defense counsel did not *first* file a general appearance. Rather, Defendants, through counsel, *first* filed a notice of removal in state court.  The notice included a statement explicitly denying that any defense was being waived.  (ECF No. 1 PgID 5.) Unlike a general appearance, a notice of removal does not constitute one of the "submissions, appearances, and filings" that give a plaintiff a reasonable expectation that the defendant "'will defend the suit on the merits or cause the court to go to some effort that would be wasted if personal jurisdiction is later found lacking[.]'" *See Gerber*, 649 F.3d at 519 (citation omitted).  The notice of removal was filed by Thomas Aycock of the Smith Haughey Rice & Roegge law firm, with Charles Behler's name also listed below the signature line.  (ECF No. 1 PgID 5.)  On September 25, 2013, Kristen Guinn, another attorney with the same firm, filed her appearance.

Visser's interpretation of *Gerber* stretches the holding beyond reasonable limits.  *Gerber* does not stand for the principle that any appearance by an attorney constitutes a waiver of a personal jurisdiction defense.  Under *Gerber*, only appearances that are inconsistent with the reasonable expectation that a defendant will defend the suit on the merits, like a general appearance at the outset of the lawsuit, will constitute a waiver of the personal jurisdiction defense.  Here, the appearance

of a third attorney from the same firm, which already appeared by filing Defendants' notice of removal, cannot reasonably be interpreted by Visser as an indication that Defendants would be waiving personal jurisdiction and would be defending the suit on the merits. The notice of removal indicates that Defendants desired to raise whatever defenses they intended in federal court, rather than state court. Guinn's appearance six days after the notice of removal was filed indicates nothing more than a third attorney from the same firm would be involved in raising those defenses.

### 2. Limited Personal Jurisdiction over Defendant CCL

Visser argues this Court may exercise personal jurisdiction over CCL for two reasons. First, CCL did business in Michigan by either initiating or otherwise causing telemarketing calls to Michigan residents. Second, the effect of CCL's tortious conduct, the violation of several statutes, occurred in Michigan. CCL argues it did not make the telephone call or calls identified in the complaint. (Mitchell Dec. ¶ 12.)

The business and tort provisions of Michigan's long-arm statutes have been broadly interpreted. The phrase "any business," as used in Michigan's long-arm statute, is broadly interpreted. "The phrase 'transaction of any business' is construed as broader than 'doing business.'" *Sifers v. Horen*, 188 N.W.2d 623, 624 (Mich. 1971) (citations omitted). The use of the word "any" in the statute indicates that "even the slightest transaction is sufficient to bring a corporation within Michigan's long-arm jurisdiction." *Oberlies v. Searchmont Resort, Inc.*, 633 N.W.2d 408, 413 (Mich. Ct. App. 2001) (citing *Sifers*, 188 N.W.2d at 624 n.2). The statutory provision for personal jurisdiction arising from a tort extends to situations where either the tortious act or the injury occurred in Michigan. *Green*, 565 N.W.2d at 813.

In the complaint, Visser alleges "Plaintiff and Class members have been contacted on

16

his/their personal residential and/or cellular telephone by Carribean Cruise Line, Inc. and/or its agent for the purpose of soliciting the sale of a cruise." (Compl. ¶ 12.)  Mitchell states that CCL did not make the telephone calls.  Mitchell's statement does not foreclose the possibility that an agent of CCL made the telephone call. In this situation, where Visser has not provided affidavits or other evidence in response to a well-supported motion to dismiss, the Court must accept only the well-pled facts of a complaint, but not conclusory allegations. *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001); *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995); *Ticketmaster-New York, Inc. v. Alioto*, 26 F.3d 201, 203 (1st Cir. 1994).

At the hearing, counsel for the defendants asserted that paragraph 12 was ambiguous.  Many courts have urged practitioners to avoid using and/or.  *See, e.g., United States v. Bush*, 70 F.3d 557, 562 (10th Cir. 1995) (regarding the conjunction and/or, "[s]uch vague language is strongly disfavored.").  Other courts have decried use of the phrase with more forceful language.  For example, one state court of appeals called and/or a "grammatical monstrosity" that "is confusing and should be condemned[.]" *Boggs v. Kentucky*, 148 S.W.2d 703 (Ky. Ct. App. 1941).  The Wisconsin Supreme Court was even more terse about the use of the phrase.

> It is manifest that we are confronted with the task of first construing "and/or," that befuddling, nameless thing, that Janus-faced verbal monstrosity, neither word nor phrase, the child of a brain of some one too lazy or too dull to express his precise meaning, or too dull to know what he did mean, now commonly used by lawyers in drafting legal documents, through carelessness or ignorance or as a cunning device to conceal rather than express meaning with view to furthering the interests of their clients.

*Emp'rs' Mut. Liab. Ins. Co. of Wisconsin v. Tollefsen*, 263 N.W. 376, 377 (Wisc. 1935). In the March 2007 issue of the Michigan Bar Journal, Joseph Kimble identified no less than six books on legal writing that warned attorneys not to use the term and/or because of its inherent ambiguity.

17

Joseph Kimble, *To the Trashcan with And/Or*, Michigan Bar Journal, March 2007, at 44.

For this motion, the Court may accept the factual allegation that an agent of CCL placed telephone calls to Michigan residents. The Court agrees that paragraph 12 is poorly drafted and somewhat ambiguous. However, the paragraph puts Defendants on notice of the claims against them, all arising from the use of the telephone. Whether Visser will ultimately prove those claims at trial, or even survive a motion for summary judgment after discovery, is not a concern at this point. Poor grammar is not a reason to grant this motion to dismiss. *See J & J Sports Prods., Inc. v. Carvajal*, No. 11-40129, 2011 WL 4499156, at * 2 (D. Mass. Sept 26, 2011) (concluding that the use of and/or was problematic, it was not a reason to grant a motion to dismiss). *But see Joe Hand Promotions, Inc. v. Creative Entm't, LLC*, –F.Supp.2d–, 2013 WL 5651803, at * (M.D. Fla. Oct. 15, 2013) (granting, in part, a motion to dismiss because the use of the phrase and/or made count 1 of the complaint ambiguous as there were possible alternatives that did not state a claim for which relief could be granted).

Visser has established a *prima facie* case for the exercise of limited personal jurisdiction over Defendant CCL. The complaint sufficiently pleads a factual basis for concluding that an agent of CCL telephoned both Plaintiff and other class members, at their residences and on their cell phones, for the purpose of soliciting a cruise. The claims in the complaint all arise from the information, or lack of information, provided in the telephone call. All of the claims allege the manner and content of the telephone calls violated one of three statutes. The factual allegations are thus sufficient to establish that CCL's conduct, or consequences of its conduct, gives rise to an action in tort.

Exercising personal jurisdiction over CCL comports with constitutional due process. The due process analysis for this claim is similar to the analysis made in *Neal* and *Schneider*. When

content of the telephone call to the forum gives rise to the cause of action, the purposefully availed element is met. The caller's failure to adhere to the statutory requirements had foreseeable consequences in Michigan. The cause of action clearly arises from the contact with the forum state. Because the first two prongs are met, the inference arises that the exercise of jurisdiction would be reasonable. Michigan certainly has a substantial interest in protecting its residents from unrestricted telephone solicitations, which is evident by the statutes enacted by the Michigan legislature. The fact that the TCPA confers concurrent jurisdiction in state courts acknowledges Michigan's interest. *See Mims v. Arrow Fin. Servs., Inc.,* – U.S. –, 132 S.Ct. 740, 745 (2012). CCL would likely be burdened by having to defend this action in Michigan. However, the weight of this factor is limited by CCL's knowledge that, by soliciting individuals from other states, it might be haled into court in a foreign state. Nothing in the record suggests that Michigan residents could not obtain relief in Florida. This final factor does not tip the balance in against the exercise of personal jurisdiction.

### 3. Limited Personal Jurisdiction over Defendant Mitchell

Visser argues this Court may exercise personal jurisdiction over Mitchell because he was the driving force behind the tortious acts committed by CCL. In his declaration, Mitchell states that he has no contacts with Michigan, and that he has "never had any conduct whatsoever with the Plaintiff in this matter." (Mitchell Dec. ¶ 7 PgID 56.) He also states that CCL did not make the calls as alleged in the complaint. (*Id.* ¶ 12 PgID 57.)

"'[J]urisdiction over the individual officers of a corporation cannot be predicated merely upon jurisdiction over the corporation." *Balance Dynamics Corp. v. Schmitt Indus., Inc.*, 204 F.3d 683, 699 (6th Cir. 2000) (quoting *Weller v. Cromwell Oil Co.*, 504 F.2d 927, 929 (6th Cir. 1974)). When a corporate officer "is actively and personally involved in the conduct giving rise to the

claim," the fact that the officer was acting in his or her corporate, rather than personal, capacity will not defeat the exercise of personal jurisdiction over the individual. *Id.* For a court to exercise personal jurisdiction over a corporate officer, the court must determine that the officer's conduct falls within the state's long-arm statute and that the exercise of jurisdiction comports with constitutional due process. *See id.* at 698; *see also Joyner v. MERS*, 451 F.App'x 505, 506 (6th Cir. 2011) ("Jurisdiction over an officer of a corporation may not be based on jurisdiction over the corporation; the officer must have purposefully availed himself of the forum.").

Visser has not set forth any facts which would support the exercise of personal jurisdiction over Mitchell. The complaint uses the name "Robert P. Mitchell" exactly three times. The first time Mitchell's name is used is in the introductory paragraph, where Visser simply identifies the two defendants. In paragraph 7, Mitchell is identified as an officer of CCL. (Compl. ¶ 7.) Finally, in paragraph 14, Visser states, that as an officer of CCL, Mitchell "caused these calls to be made." (*Id.* ¶ 14.) Mitchell is not specifically named in any other paragraph in the complaint. The only basis in the entire record for this Court to exercise jurisdiction over Mitchell is the assertion in paragraph 14 of the complaint that Mitchell caused the telephone calls to be made. It is not entirely clear if this is a factual or a legal assertion, largely because of the omission of any additional information. The conclusory allegation fails to provide sufficient detail for this Court to accept the fact as true for the purpose of this motion.

Visser's response provides no additional evidence to support the exercise of jurisdiction over Mitchell. In his response, Visser argues "Mitchell is the president of CCL and there is no doubt that Defendant Mitchell is the 'driving force' behind CCL." (Pl. Resp. 11 PgID 98.) Visser states there is a "trail of evidence showing that Defendants have a pattern of knowingly violating the TCPA and

other regulations[.]" (*Id.*) Finally, Visser insists that Mitchell is responsible for CCL's compliance with the TCPA. (*Id.*) The response, however, contains no evidence supporting the assertions made within the briefs. "It is well settled in our circuit that 'assertions by counsel do not constitute probative evidence.'" *Mid-Century Ins. Co. v. Fish*, 749 F.Supp.2d 657, 678 (W.D. Mich. 2010) (quoting *JDC Mgmt., LLC v. Reich*, 644 F.Supp.2d 905, 929 (W.D. Mich. 2009)); *see, e.g., I.N.S. v. Phinpathya*, 464 U.S. 183, 188 n.6 (1984) ("Counsel's unsupported assertions in respondent's brief do not establish that respondent could satisfy the 'continuous physical presence' requirement."); *Duha v. Agrium, Inc.*, 448 F.3d 867, 879 ("Arguments in parties' briefs are not evidence."); *Tapco Prods. Co. v. Van Mark Prods. Corp.*, 446 F.2d 420, 429 (6th Cir. 1971) ("The unsworn, self-serving statements of counsel are not evidence.") In at least one similar situation, the Sixth Circuit did not hesitate to hold that the district court could not exercise personal jurisdiction over the defendant. *Chrysler Corp. v. Fedders Corp.*, 643 F.2d 1229, 1237 (6th Cir. 1981) ("Chrysler did not submit counter-affidavits and, as the trial court pointed out, offered no reason to doubt any of the statements in Mr. Calzada's affidavits. Under these circumstances, we hold that Chrysler's totally unsupported allegations of conspiracy cannot constitute sufficient contacts with Michigan to justify an exercise of personal jurisdiction over Interclisa by the District Court.").

The "trail of evidence," the exhibits attached to Visser's response, does not establish Mitchell's involvement in making the telephone calls. Exhibit 1 is a complaint against CCL, among others, filed in the Northern District of Illinois, but does not mention Mitchell by name. (ECF No. 8-1 Pl. Ex. 1 PgID 113-26.) The allegations by other attorneys in another lawsuit do not constitute evidence. Exhibit 2 is an order ruling on a 12(b)(6) motion in a lawsuit against CCL, but not against Robert Mitchell. (ECF No. 8-2 Pl. Ex. 2 PgID 128-31.) The factual allegations in that complaint

had to be accepted as true for the purpose of the motion. (*Id.* at 128.) Exhibits 5 and 6 are transcripts of recorded telephone calls. (ECF Nos. 8-5 and 9-1 Pl. Exs. 5 and 6.) Exhibit 7 is a compact disk containing the audio recording of the telephone calls. Mitchell is mentioned in the first call as the owner of CCL. Nothing in the telephone calls allows the inference that Mitchell caused the calls to be made.

### 4. Discovery

In a footnote, Visser asserts that, if the Court believes general jurisdiction is an issue, then the Court ought to allow preliminary discovery on the contacts and telephone calls with Michigan residents. (Pl. Resp. 6 n.3 PgID .) In a later footnote, Visser states that he anticipates that discovery would produce evidence of a conspiracy between CCL and other entities or alter-egos to direct business activity toward Michigan.

Discovery may be appropriate when a defendant moves to dismiss for lack of personal jurisdiction. *Chrysler Corp.*, 643 F.2d at 1240. The decision to allow discovery, and the scope of the discovery, fall with the district court's discretion. *Id.* Where the written submissions raise issues of credibility or disputed issues of fact which require resolution, the district court may allow discovery and conduct a preliminary evidentiary hearing. *American Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169 (6th Cir. 1988) (quoting *Welsh v. Gibbs*, 631 F.2d 436, 438-39 (6th Cir. 1980)). However, a district court does not abuse its discretion in denying discovery when the plaintiff's pleadings and affidavits fail to establish a *prima facie* case for exercising personal jurisdiction. *Kerry Steel, Inc. v. Paragon Indus.,* Inc., 106 F.3d 147, 154 (6th Cir. 1997) (quoting *Market/Media Research, Inc. v. Union Tribune Publ'g Co.*, 951 F.2 102, 106 (6th Cir. 1991); *Chrysler Corp.*, 643 F.2d at 1240.

Visser's failure to file an affidavit or otherwise put forward evidence in response to Defendants' motions to dismiss creates a situation where there are no competing questions of credibility or disputes of fact. None of Visser's evidence creates any disputed facts about Mitchell's contacts with Plaintiff or with Michigan. None of Visser's allegations regarding Mitchell require this Court to evaluate credibility. "Where a plaintiff offers only speculation or conclusory assertions about contacts with a forum state, a court is within its discretion in denying jurisdictional discovery." *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 402 (4th Cir. 2003); *see Atlantis Hydoponics, Inc. v. Int'l Growers Supply, Inc.*, 915 F.Supp.2d 1365, 1380 (N.D. Ga. 2013) ("The purpose of jurisdictional discovery is to ascertain the truth of the allegations or facts underlying the assertion of personal jurisdiction. It is *not* a vehicle for a 'fishing expedition' in the hopes that discovery will sustain the exercise of personal jurisdiction.") (italics in original, internal quotation marks omitted, citations omitted).

## DISMISSAL UNDER RULE 12(b)(6)

### A. Failure to Distinguish Between the Two Defendants

Defendants argue the claims should be dismissed because Visser does not distinguish between the two defendants in the complaint. Rather, Visser lumps the two defendants together, complaining of actions by Defendants as a collective entity. Visser does not directly address this argument in his response.

Defendants' proposition of law is generally accurate. Generic references to the actions of all defendants fail the notice-pleading standard contained in Rule 8 of the Federal Rules of Civil Procedure. *See Bondex Int'l, Inc. v. Harford Accident and Indem. Co.*, 667 F.3d 669, 681 (6th Cir.

2011).  Defendants' legal authority for this proposition, however, does not apply to this situation.

Both *State Farm Fire and Cas. Co. v. Allied and Assocs.*, 860 F.Supp.2d 432, 441 (E.D. Mich. 2012)

and *Benoay v. Decker*, 517 F.Supp. 490, 493 (E.D. Mich. 1981) involved claims for fraud, a special

matter that must be pled with particularity under Rule 9(b).  As noted in Wright and Miller, also

cited by Defendants, the usual remedy for the failure to adequately distinguish between the conduct

of multiple defendants is to allow the plaintiff leave to amend the complaint.  Charles A. Wright and

Arthur R. Miller, 5 Federal Practice and Proceeding, § 1248 (3d ed. Westlaw 2013.)

      The complaint will not be dismissed for failure to distinguish between the two defendants.

The complaint alleges Mitchell caused the telephone calls to be made; the complaint does not allege

Mitchell made any telephone calls.  Because Mitchell allegedly caused the telephone calls to be

made, Visser believes Mitchell can be held responsible for all the telephone calls made on behalf

of CCL.  The complaint gives both Mitchell and CCL adequate notice of the claims against them.

**B. Failure to State a Claim**

      Under the notice pleading requirements, a complaint must contain a short and plain statement

of the claim showing how the pleader is entitled to relief.  Fed. R. Civ. P. 8(a)(2).  This rule imposes

both legal and factual requirements on the complainant.  *16630 Southfield Ltd. P'ship v. Flagstar

Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).  The complaint need not contain detailed factual

allegations, but it must include more than labels, conclusions, and formulaic recitations of the

elements of a cause of action.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v.

Iqbal*, 556 U.S. 662, 678 (2009).

      To survive a motion to dismiss under Rule 12(b)(6), the plaintiff must provide sufficient

factual allegations that, if accepted as true, are sufficient to raise a right to relief above the

speculative level, *Bell Atl.,* 550 U.S. at 555, and the "claim to relief must be plausible on its face," *Id.* at 570. "A claim is plausible on its face if the 'plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 369 (6th Cir. 2011) (quoting *Twombly*, 550 U.S. at 556); *see Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 519 (6th Cir. 2008) ("Even under Rule 12(b)(6), a complaint containing a statement of facts that merely creates a *suspicion* of a legally cognizable right of action is insufficient.") "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft,* 556 U.S. at 678. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). When considering a motion to dismiss, a court must accept as true all factual allegations, but need not accept any legal conclusions. *Ctr. for Bio-Ethical Reform,*, 648 F.3d at 369.

Where a complaint fails the notice pleading requirements, the plaintiff "is not entitled to discovery[.]" *Ashcroft*, 556 U.S. at 686. "Although Rule 8 does not constitute a 'hyper-technical code-pleading regime,' it 'does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.'" *Brown v. Matauszak*, 415 F.App'x 608, 613 (6th Cir. 2011) (quoting *Ashcroft*, 556 U.S. at 678-79). The notice pleading requirements are not altered because the defendant or some third party, rather than the plaintiff, possesses the evidence necessary for the plaintiff to ultimately prove his or her claim. *New Albany Tractor, Inc. v. Louisville Tractor, Inc.*, 650 F.3d 1046, 1051 (6th Cir. 2011); *see Patterson v. Novartis Pharm. Corp.*, 451 F.App'x 495, 498 (6th cir. 2011) ("The Supreme Court's decisions in *Twombly* and *Iqbal* do not permit a plaintiff to

25

proceed past the pleading stage and take discovery in order to cure a defect in the complaint.").

**1. TCPA**

Visser alleges violations of two separate provisions of the TCPA as counts 1 and 2 of the complaint.  For count 1, Visser alleges violations of 47 U.S.C. § 227(b)(1)(B).  For count 2, Visser alleges violations of 47 U.S.C. § 227(b)(1)(A)(iii).  The statute contains the following provisions:

> (b) Restrictions on the use of automated telephone equipment
>> (1) Prohibitions
>> It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States - -
>>> (A) to make any call (other than a call made for emergency purpose or made with the prior express consent of the called party) using any automated telephone dialing system or an artificial or prerecorded voice - -
>>> \*\*\*
>>>> (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call;
>> (B) to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the express prior consent of the called party, unless the call is initiated for emergency purposes or is exempt by rule or by order of the Commission under paragraph (2)(B);

47 U.S.C. § 227(b)(1) (West, Westlaw current through Pub. Law 133-74 approved Jan. 16, 2014).  The two provisions relied upon by Visser apply to two different types of telephones.  Section 277(b)(1)(A)(iii) regulates calls to cellular, or wireless, telephones, among others.  Subsection (b)(1)(B) applies to residential or land lines.  *See Iniguez v. CBE Group*, – F.Supp.–, 2013 WL 4780785, at * 7 (E.D. Cal. Sept. 5, 2013); *Breslow v. Wells Fargo Bank*, 857 F.Supp.2d 1316, 1320 (S.D. Fla. 2012).

Visser has pleaded sufficient facts for counts 1 and 2, violations of the TCPA.  When considering a motion to dismiss for a failure to state a claim, the court begins by identifying the

26

elements of the claim. *See Ashcroft*, 556 U.S. at 675. To state a claim under § 227(b)(1)(B), a plaintiff must allege (1) the defendant initiated a telephone call (2) to plaintiff's residential telephone, (3) using an artificial or prerecorded voice to deliver a message, and (4) without plaintiff's prior consent.[2] 47 U.S.C. § 227(b)(1)(B). Paragraphs 12, 33 and 34 contain factual assertions supporting the claim.

> 12. Plaintiff and Class members have been contacted on his/their personal residential and/or cellular telephone by Caribbean Cruise Line, Inc. and/or its agent for the purpose of soliciting the sale of a cruise.

> 33. Plaintiff and Class members did not expressly consent prior to receiving the telephone call complained of from Defendants.
> 34. Defendants made, or caused to be made, telephone calls to Plaintiff and Class members using an artificial or prerecorded voice to Plaintiff at his residential number in violation of the TCPA.

(Compl.). Whether the telephone call violated the TCPA, the assertion at the end of paragraph 43, would be a legal conclusion that this Court need not accept. The Court may, however, accept the factual assertions that the calls were made using a prerecorded or artificial voice to residential telephones. These facts, although little more than a formulaic recitation of the elements, are sufficient to put Defendants on notice of the claim asserted. Visser alleges he received a telephone call on his residential phone from either CCL or one of its agents. The seller used an artificial or prerecorded voice and attempted to sell a cruise. On these facts, Visser has stated a plausible claim.

Defendants argue that the a plaintiff must also plead and eventually prove that the call was made by an automatic telephone system and that plaintiff was charged for the call. *See Knutson v. ReplyA, Inc.*, No. 10-cv-1267, 2011 WL 290176, at * (S.D. Cal. Jan. 27, 2011) ("The only elements

---

[2]The failure to consent is likely not an element of the claim; consent would be a defense to the claim. Whether consent is or is not an element need not be resolved as Plaintiff has included the lack of prior consent as an allegation in the complaint. (Compl. ¶ 33.)

Plaintiff must successfully plead are: that Defendant made the call; Plaintiff was charged for the call; and the call was made using any automatic telephone device or an automatic or prerecorded voice.") Neither argument is persuasive. The statute is worded in the alternative, such that the caller may not use either an automated dialing system or a prerecorded or artificial voice. The use of a prerecorded voice, but not the use of an automated dialing system, would suffice to violate the statute. Similarly, the statute does not require that the plaintiff be charged for the call. Rather, being charged for the call is one of several, nonexclusive, prohibitions.

To state a claim under § 227(b)(1)(A)(iii), a plaintiff must allege the defendant (1) made a call using (a) an automated telephone dialing system or (b) an artificial or prerecorded voice (2) to a cellular telephone service.[3] 47 U.S.C. § 227(b)(1)(A)(iii). A plaintiff may recover treble damages if this provision was willfully or knowingly violated by the defendant. *Id.* § 227(b)(3)(C). Paragraphs 12 and 43 contain factual assertions supporting the elements of the claim.

> 12. Plaintiff and Class members have been contacted on his/their personal residential and/or cellular telephone by Caribbean Cruise Line, Inc. and/or its agent for the purpose of soliciting the sale of a cruise.

> 43. Defendants made, or caused to be made, pre-recorded and/or artificial telephone calls to Plaintiff and Subclass Member's cellular telephones in violation of 47 U.S.C. § 227(b)(1)(A)(iii).

(Compl.). Again, whether the telephone call violated the statute, the assertion at the end of paragraph 43, is a legal conclusion that this Court need not accept. The Court may accept the factual assertion that a prerecorded telephone call was made to Visser's cell phone. Again, these facts are little more than a formulaic recitation of the elements of the claim, but they are sufficient to put Defendants on notice of the claim asserted. Visser alleges he received a prerecorded telephone call

---

[3]The other devices listed along with a cellular telephone as part of subsection (1)(A)(iii) are not at issue.

on his cell phone from either CCL or one of its agents. As part of that telephone call, the seller tried to sell Visser a cruise. On these facts, Visser has stated a plausible claim.

### 2. MHSSA

Visser alleges Defendants violated the MHSSA. The Michigan statute covers sales of goods and services of more that $25.00 in which the seller uses a telephone, and the solicitation is received by the buyer at is or her residence. Mich. Comp. Laws § 445.111(a) (West, Westlaw current through 2014 Pub. Acts No. 33 of the 2014 Regular Session, 97th Legislature). The MHSSA provides that the sale shall not be made by telephone "using in whole or in part a recorded message." *Id.* § 445.111a(1). The individual making the call "shall state his or her name and the full name of the organization or other person on whose behalf the call was initiated and provide a telephone number of the organization or other person on request." *Id.* § 445.111b(1). The MHSSA provides that it is an unfair or deceptive practice and a violation of the act for a telephone solicitation to "[o]ffer to a consumer in this state a prize promotion in which a purchase or payment is necessary to obtain the prize." *Id.* § 445.111c(1)(e). The statute also makes failure to comply with § 445.111a and § 445.111b an unfair and or deceptive practice and a violation of the act. *Id.* § 445.111c(1)(f).

Visser alleges sufficient facts that state a claim for violations of the MHSSA. Visser alleges Defendants made, or caused to be made, to his residence, a telephone solicitation that included a recorded message. (Compl. ¶¶ 12 and 49.) The person making the telephone call did not, at the beginning of the call, state his or her name or the name of the organization on whose behalf the call was initiated. (*Id.* ¶¶ 50-51.) The telephone solicitation offered a free cruise, for which a payment was later demanded of the recipient in order to claim the prize. (*Id.* ¶¶ 12 and 53.) Again, these factual allegations contain little more than formulaic recitations of the elements of the claim. The

29

allegations are, however, sufficient to put Defendants on notice of the claim asserted.

### 3. MCPA

Visser also alleges Defendants violated the MCPA. Under this statute, it is an unlawful practice to represent "that a consumer will receive goods or services 'free' or 'without charge,' . . . without clearly and conspicuously disclosing with equal prominence in immediate conjunction with the use of those words the conditions, terms, or prerequisites to the use or retention of those goods or services advertised." Mich. Comp. Laws § 445.903(1)(r) (West, Westlaw current through 2014 Pub. Acts No. 33). The MCPA further prohibits violations of "MCL 445.111 to 445.117, in connection with a home solicitation sale or telephone solicitation. . . ." *Id.* §445.903(1)(gg).

Michigan statutes must be interpreted with reference to common law and given the common law meaning, absent evidence to the contrary. *Mayhall v. A.H. Pond Co., Inc.*, 341 N.W.2d 268, 270 (Mich. Ct. App. 1983). Although the vast majority of claims brought under the MCPA will involve fraud-like claims, the MCPA does have a broader scope. *Id.* Michigan courts have held that fraud-like claims made under the MCPA should be construed "'with reference to the common-law tort of fraud.'" *Zine v. Chrysler Corp.*, 600 N.W.2d 384, 398 (Mich. Ct. App. 1999) (quoting *Mayhall*, 341 N.W.2d at 270). Federal courts, including this one, have required plaintiffs alleging fraud-like claims under the MCPA to plead their claims with the particularity required by Rule 9 of the Federal Rules of Civil Procedure. *See German Free State of Bavaria v. Toyobo Co., Ltd.*, 480 F.Supp.2d 958, 968 (W.D. Mich. 2007) (Enslen, S.D.J.); *see also Michels v. Monacho Coach Corp.*, 297 F.Supp.2d 642, 651 (E.D. Mich. 2003) (refusing to dismiss the plaintiff's MCPA claim for failure to state the claim with particularity because the MCPA claim was premised on breach of express and implied warranties, not fraud).

30

Under Michigan law, a plaintiff alleging fraud must establish (1) the defendant made a material representation, (2) the representation was false, (3) when the defendant made the representation, the defendant knew the representation was false, or made it recklessly, (4) the defendant made the representation with the intention that the plaintiff would act on it, (5) the plaintiff acted in reliance on the material representation, and (6) the plaintiff suffered damages. *M&D, Inc. v. W.B. McConkey*, 585 N.W.2d 33, 36 (Mich. Ct. App. 1998). Claims for fraud must be pled with particularity under a heightened pleading standard. Fed. R. Civ. P. 9(b). To satisfy the Rule 9 standard, a claim for fraud must include, at a minimum, "the time, place, and contents of the misrepresentations upon which they relied." *Frank v. Dana Corp.*, 547 F.3d 564, 570 (6th Cir. 2008).

Visser has not alleged sufficient facts to state a claim for violations of the MCPA. In his response, Visser does not address the argument that his claims under the MCPA must meet the heightened pleading standard for fraud. The complaint, which was filed after the lawsuit was removed, fails to allege a claim for fraud under the MCPA with any particularity. The complaint is devoid of any details about when the telephone call occurred, who spoke to Visser, or how the misrepresentation occurred. Complaint indicates only that some speaker offered a free cruise and later required some monetary payment. Beyond those facts, the complaint contains no details sufficient to meet the heightened pleading standard.

### 4. Defendant Mitchell

The only allegation connecting Mitchell to the telephone calls is the assertion that Mitchell, as president of CCL, "caused these calls to be made." (Compl. ¶ 14.) This pleading is similar to the pleadings in *Twombly* and *Ashcroft*. In *Twombly*, the plaintiff alleged facts establishing parallel

31

conduct by the defendants, that were consistent with the inference that the defendants entered into anticompetitive agreements. *Twombly*, 550 U.S. at 550-51. The Court concluded that such allegations were insufficient, as case law had squarely rejected evidence of parallel behavior as sufficient to establish a claim for a violation of the Sherman Antitrust Act. *Id.* at 553-54. In *Ashcroft*, the plaintiff alleged conduct amounting to constitutional violations by the FBI, and alleged that Ashcroft and Mueller knew of and condoned the conduct. *Ashcroft*, 556 U.S. at 669. The Court concluded that the allegations against those two defendants were insufficient, as case law had squarely rejected holding Government officials liable under a theory of respondeat superior. *Ashcroft*, 556 U.S. at 676. The Court explained that the plaintiffs had to plead "that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id.* More specifically for the claims raised, the plaintiff had to plead and prove that the officials acted with a discriminatory purpose. *Id.*

Visser has not alleged sufficient facts to state a claim against Mitchell for violations of any of the three statutes. The complaint includes no factual basis for concluding that Mitchell caused the telephone calls to be made. Paragraph 14 of the complaint contains nothing more than a conclusory assertion, unsupported by any facts. The fact that CCL, or an agent of CCL, made unsolicited telephone calls does not require the inference that Mitchell caused or directed those telephone calls to be made. Pleading facts that are consistent with that inference is insufficient. To state a claim against Mitchell, Visser needed to assert that Mitchell was actively and personally involved in the conduct giving rise to the claim. *See Balance Dynamics*, 204 F.3d at 698.

## DISMISSAL OF CLASS ACTION CLAIMS

Defendants argue the class action claims should be dismissed. Defendants argue Visser

received a telephone call only on his residential telephone, not his cellular telephone and therefore he would not have standing to bring any claim, or represent any class, involving telephone calls to cell phones. Defendants argue that formulaic recitations of the elements of a class action are insufficient to survive a motion to dismiss.

Where the complaint, including ones for class action, fail to state a claim upon which relief may be granted, dismissal of the complaint is appropriate. *See, e.g., In re Iowa Ready-Mix Concrete Antitrust Litigation.*, 768 F.Supp.2d 961, 974-76 (N.D. Iowa 2011). The Sixth Circuit has cautioned that the merits of the claim should not be confused with the requirements necessary to maintain a class action lawsuit. *Weathers v. Peters Realty Corp.*, 499 F.2d 1197, 1201 (6th Cir. 1974) ("Additionally, when determining the maintainability of a class action, the district court must confine itself to the requirements of Rule 23 and not assess the likelihood of success on the merits.") Although the ability to maintain a class action may be determined on the pleadings, "ordinarily the determination should be predicated on more information than the pleadings provide." *Id.* at 1200. Within its discretion, trial courts may order precertification discovery, limited to the elements of Rule 23, without allowing discovery on the underlying merits of the claims. *Nat'l Org. for Women v. Sperry Rand Corp.*, 88 F.R.D. 272, 277 (D. Conn. 1980).

The class action claim should not be dismissed at this point. At least some of the claims have survived the 12(b)(6) and 12(b)(2) motion.

## VISSER'S REQUEST FOR LEAVE TO AMEND THE COMPLAINT

In his response, Visser requests that, if the Court determines that the complaint is technically deficient, he should be given leave to file an amended complaint to cure the deficiencies. Under Rule 15, a party may amend its pleading after a responsive pleading has been filed only with the

opposing party's written consent or with the court's leave, which should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2).

Visser has not established that justice requires leave to amend the complaint. Under the Local Rules, proposed pleadings, like an amended complaint, should be filed as part of any motion requesting leave to amend a pleading. W.D. Mich. LR Civ. P. 5.7(f). Visser has not demonstrated that he could amend the pleadings to overcome the deficiencies regarding his MCPA claims or his claims against Mitchell.

## CONCLUSION

Defendant CCL's motion to dismiss is granted in part and denied in part. Visser has established a *prima facie* case for the exercise of personal jurisdiction over CCL. Taking the factual allegations in the complaint to be true, Visser has pled claims for violations of the TCPA and for the MHSSA. Visser, however, has not alleged with sufficient particularity a claim under the MCPA. At this stage of the litigation, dismissal of the class action claims would be premature.

Defendant Mitchell's motion to dismiss is granted. Visser has failed to establish a *prima facie* case for the exercise of jurisdiction over Mitchell. Even if this Court were to exercise jurisdiction over Mitchell, the complaint fails to allege sufficient facts that would entitle Visser to relief against Mitchell for violations of any of the three statutes.

## **ORDER**

Consistent with the accompanying Opinion, **IT IS HEREBY ORDERED** that:

1.  Defendant CCL's motion to dismiss (ECF No. 6) is **GRANTED IN PART and DENIED IN PART.**  The motion is granted under Rule 12(b)(6) for failure to state a claim for Count 4 of the complaint.  The claim against Defendant CCL for violations of the MCPA is **DISMISSED WITH PREJUDICE.**  With respect to all other issues raised in Defendant CCL's motion to dismiss, the motion is **DENIED.**

2.  Defendant Mitchell's motion to dismiss (ECF No. 7) is **GRANTED.**  Visser has not established facts sufficient for the exercise of personal jurisdiction over Mitchell.  Even if this Court could exercise jurisdiction over Mitchell, the complaint fails to state a claim against Mitchell for which relief may be granted.  Therefore, Defendant Mitchell is **DISMISSED** from this lawsuit.  This Court need not resolve any other issue raised in Mitchell's motion.


Date:    April 4, 2014                                    /s/ Paul L. Maloney
                                                          Paul L. Maloney
                                                          Chief United States District Judge